712 So.2d 189 (1998)
Carolyn E. LACY
v.
ABC INSURANCE CO., Dolgencorp, Inc., d/b/a Dollar General Store, John Doe And Jim Doe.
No. 97-CA-1182.
Court of Appeal of Louisiana, Fourth Circuit.
April 1, 1998.
Rehearing Denied April 30, 1998.
*190 Mark A. Pivach, Michael L. Martin, Pivach & Pivach, Belle Chasse, for Plaintiff-Appellant Carolyn E. Lacy.
Stephen C. Resor, Michael M. Meunier, Sullivan, Stolier & Resor, New Orleans, for Defendant-Appellant Dolgencorp, Inc.
Before KLEES, WALTZER and MURRAY, JJ.
*191 MURRAY, Judge.
Dolgencorp, Inc., appeals a judgment holding it liable for injuries suffered by Carolyn E. Lacy, when she slipped and fell in its Buras, Louisiana store. For the following reasons, we affirm.

FACTS:
Carolyn E. Lacy filed suit against Dolgencorp, Inc., d/b/a Dollar General Store (hereafter Dolgencorp), its insurer, manager and an employee, alleging that she slipped on a piece of banana and injured her knee while shopping in defendant's store on December 7, 1994. A jury returned a verdict in Ms. Lacy's favor, awarding damages as follows: $52,000 for past and future medical expenses; $76,000 for past lost earnings; $19,000 for future lost earnings; $50,000 for physical pain and suffering; and $10,000 for lost enjoyment of life. The jury did not award Ms. Lacy anything for her claims of mental anguish or permanent disability. The trial court rendered judgment on November 13, 1996, in accord with the jury's verdict. Dolgencorp moved for judgment notwithstanding the verdict or, in the alternative, for new trial or, in the further alternative, for remittitur. Ms. Lacy moved to have costs assessed. The trial court denied Dolgencorp's motions and assessed court costs of $3,614.45.
Dolgencorp appeals from both the original judgment and the judgment denying its post-trial motions. Ms. Lacy cross appeals seeking to increase the jury award based on her claims for mental anguish and permanent disability, and to increase the costs assessed by the trial judge.

DISCUSSION:

A. Dolgencorp's Appeal:
Louisiana Revised Statute 9:2800.6 B establishes the burden of proof in a negligence claim against a merchant for injuries sustained due to a fall on the premises. The claimant must prove that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
(3) The merchant failed to exercise reasonable care.
The term "constructive notice" is defined to mean that "the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La.Rev.Stat. 9:2800.6 C(1).[1]
In White v. Wal-Mart Stores, Inc., 97-0393, p. 4 (La.9/9/97), 699 So.2d 1081, 1084, the Supreme Court explained that the temporal element, that is, "such a period of time...," requires a positive showing by the claimant of the existence of a hazardous condition prior to the fall. The Court further explained that whether the period of time was long enough for the merchant to have discovered the condition is a question of fact. In White, the Court reversed the lower court's judgment awarding plaintiff damages because it found that the plaintiff had presented absolutely no evidence that the condition existed for any length of time. Id. at p. 7, 1086. The Court discussed the fact that the lower court had disbelieved the defendant's evidence that no spill existed just minutes before the plaintiff's fall, and found that disbelieving the defendant did not create positive evidence by the plaintiff, but merely negated the defendant's evidence. White, supra, at p. 5, 1085.
Dolgencorp argues in a supplemental brief (filed after publication of the Supreme Court opinion in White) that Ms. Lacy, like the plaintiff in White, did not satisfy her burden of proving that the banana was on the floor for any length of time before the accident.[2]
*192 Although Dolgencorp has correctly set out the plaintiff's burden as articulated in White, we find that the facts of the instant case distinguish it from White. Ms. Lacy testified that the banana on which she slipped was dirty-looking. In addition, Ms. Rhonda Rodi, the store employee who was summoned when Ms. Lacy fell, testified that there were two pieces of banana on the floor. One piece of banana, which was found where Ms. Lacy said it was, looked as if someone had slid across it. Ms. Rodi found the second piece of banana in another aisle, several feet away from where Ms. Lacy slipped. Ms. Rodi described the banana as being off-white, similar in color to the floor. Thus, plaintiff produced positive evidence from which the jury could have inferred that the banana had been on the floor long enough to become dirty and to have been kicked from one aisle to another by customers. See Beninate v. Wal-Mart Stores, 97-802 (La.App. 3 Cir. 12/10/97), 704 So.2d 851 (Court found that testimony that french fry was on the floor and that the area around it had become black satisfied plaintiff's burden under White of offering some evidence that the hazardous condition existed for some time before the accident.).
In addition, the testimony of the Dolgencorp employees was inconsistent with the store's time records and their deposition testimony. Dawn Hartzog, the store manager, testified that she left the store around 2 p.m. to run errands, and that she used the main aisle (the aisle in which the alleged accident occurred) to exit the store. She testified that she did not see a banana on the floor, nor did she see anyone eating a banana in the store. Ms. Hartzog recalled that Rhonda Rodi was present in the store when she left on her errands.
On cross-examination Ms. Hartzog admitted that she had testified in her deposition that the accident occurred around 10 a.m. When questioned about discrepancies between the information recorded on the store's timesheets and the testimony of the store employees regarding who was present in the store around the time of the accident, she testified that the timesheets were not accurate.
Claudia Jefferson was the sole cashier on duty at the time of the accident. She also testified that the timesheets were not accurate. Ms. Jefferson testified that she summoned Rhonda to the front of the store for help after Ms. Lacy reported the accident, and that Rhonda came to the front using a different aisle than the one in which Ms. Lacy slipped.
Rhonda Rodi, who also claimed that the timesheets were inaccurate, disagreed with Ms. Jefferson's testimony that she came down an aisle other than the main aisle when she was summoned after the accident. On cross-examination, Ms. Rodi, like Ms. Hartzog, admitted that she had testified in her deposition that the accident occurred at 10:00 a.m.
It is well settled that the issue for a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was reasonable. Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880, 882 (La.1993). If a review of the record in its entirety supports the conclusion that the factfinder's determinations were reasonable, the court of appeal may not reverse, even if convinced that it would have weighed the evidence differently had it been the trier of fact. Id. at 882-83; Housley v. Cerise, 579 So.2d 973 (La.1991). This is because the fact finder is better able to evaluate live witnesses, as compared with the appellate court's review of a "cold" record. Stobart at 883.
Our review of the entire record of this case satisfies us that the jury reasonably could have inferred, based on the testimony about the condition and location of the banana pieces and its assessment of the credibility of the witnesses, that the hazardous condition had existed long enough for it to have been discovered by Dolgencorp in the exercise of reasonable care.
*193 Dolgencorp also complains that the trial court erred in finding a causal relationship between the incident in the Dollar General Store in December 1994 and Ms. Lacy's subsequent injuries and arthroscopic surgeries.
The burden of proving a causal relationship between injuries sustained and the accident that caused the injury lies with the plaintiff in a personal injury suit. The test to determine if that burden has been met is whether the plaintiff proved through medical testimony that it is more likely than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603 and 94-2615, p. 3 (La.2/20/95), 650 So.2d 757, 759; Maldonado v. Louisiana Superdome Com'n, 95-2490, p. 11 (La.App. 4 Cir. 1/22/97), 687 So.2d 1087, 1093, writ denied, 97-0469 (La.4/18/97), 692 So.2d 448. A plaintiff's injury is presumed to have resulted from an accident if (1) the plaintiff was in good health before the accident, (2) commencing with the accident, the injury and symptoms continuously manifest themselves afterwards, and (3) the medical evidence shows a reasonable connexity between the accident and the injury. Housley v. Cerise, supra at 980. The defendant may defeat the presumption by showing that some other particular incident could have caused the injury. Maranto, supra at p. 7, 761; Turner v. Cleveland Trust Co., 95-2488, p. 18 (La.App. 4 Cir. 5/22/96); 686 So.2d 871, 878, writ denied, 96-1531 (La.9/27/96), 679 So.2d 1350. This issue is factual and is subject to the manifest error standard of review. Maranto, supra.
Dolgencorp attempts to rebut the presumption of causation in several ways. First, it contends that no healthcare provider testified that the damages to Ms. Lacy's, knee discovered in the first arthroscopic surgery, had anything to do with the accident in the Dollar General Store. Second, it argues that the medical records indicated that Ms. Lacy's knee hyper-extended when she fell on March 22, 1995, which is not the same as her knee "giving way," which she claimed happened when she slipped on the banana. Third, as to the second arthroscopy, it argues that there was no evidence that the incident in June of 1995 when Ms. Lacy twisted her knee was caused as a result of the December 1994 accident. These arguments, however, are not supported by the record.
Dr. Robert Fleming[3] saw Ms. Lacy five days after her fall in the Dollar General Store. He testified that Ms. Lacy gave him a history of having slipped on a banana, causing her left knee to give way and pop. His physical examination revealed tenderness over the inner aspect of her knee, but no instability or significant swelling. Both routine and stress x-rays were normal. He diagnosed a knee sprain, and recommended that Ms. Lacy use crutches for walking, and place ice and heat intermittently on her knee. She returned two weeks later with the same complaints.
At a January 12 appointment, Ms. Lacy complained of pain and swelling, but Dr. Fleming did not detect any fluid or swelling of her knee. An MRI of the knee was normal. Dr. Fleming testified that, although an MRI is one of the best diagnostic tools available, it does not always detect everything.
Ms. Lacy had two more visits with Dr. Fleming in February. He found that she had a limited range of motion, sixty to seventy percent, and referred her to physical therapy. In subsequent evaluations, Dr. Fleming detected grinding between Ms. Lacy's patella and femur, and x-rays revealed a narrowing of the joint between her patella and femur. On March 28, 1995, he recommended arthroscopic surgery and a procedure to release the pull of the patella on the femur. The surgery on April 6 revealed degenerative changes of the lateral tibial plateau, a small degenerative tear in the lateral meniscus, and chondromalacia under the patella.
Ms. Lacy continued to see Dr. Fleming for post-operative follow-ups. On June 15, 1995, she reported twisting her knee. The examination did not reveal any swelling, but Ms. Lacy complained of pain over the popliteal artery. Because of this, Dr. Fleming referred Ms. Lacy for tests to check for blood clots. These tests were negative.
*194 Ms. Lacy continued to complain of pain over the front of her knee and of a grinding sensation behind her knee. After a second opinion was obtained, Dr. Fleming again performed a second arthroscopic surgery on October 4, 1995. This surgery revealed Assuring of the patellofemoral joint, and arthritic changes in the medial and lateral tibial plateaus.
Because of continued complaints of pain, Dr. Fleming recommended that Ms. Lacy get a metal support brace for her knee. He advised her only to use it when absolutely necessary, as continued use would cause further weakening of her quadriceps. Dr. Fleming also referred her to physical therapy again to improve her quadriceps strength, and strongly advised that she lose a significant amount of weight. Ms. Lacy was still complaining of pain and grinding in her knee in August of 1996. X-rays taken at that time revealed a narrowing of the patellofemoral joint.
Although Dr. Fleming acknowledged that Ms. Lacy did not tell him about a fall she had at home just prior to her March 28, 1995, appointment when it was decided that arthroscopic surgery was in order, he had the physical therapist's notes, which contained that information. Dr. Fleming testified that his notes from his very first visit with Ms. Lacy indicated that she reported to him that her knee gave way and popped when she slipped on the banana in the Dollar General Store. The doctor also stated that he had no reason to disbelieve the physical therapy note on March 13, 1995, in which it was recorded that Ms. Lacy complained to the therapist that her knee continued to pop and give way after the accident. Finally, Dr. Fleming was asked, assuming that the two incidents subsequent to the fall in December were caused by Ms. Lacy's knee giving way, whether these incidents were related to that fall. The doctor responded that "[i]t would be compatible with the findings at the time of arthroscopy."
Dolgencorp argues that Turner, supra, in which this court found that the plaintiff's subsequent automobile accident, and not the fall on carpet in her apartment, was the probable cause of the injuries that necessitated surgery, supports its argument that Ms. Lacy's first arthroscopic surgery was related to her fall on March 22, 1995, and not the accident in its store in December. We disagree as the two cases are easily distinguished.
Ms. Turner did not seek the neurological treatment that resulted in various surgical procedures until after the subsequent automobile accident. She did not tell her treating neurosurgeon about the automobile accident, and he had no way of knowing about it otherwise. The doctor testified that the automobile accident could have caused Ms. Turner's lower back problems. In addition, Ms. Turner had serious credibility problems. She was shown to have lied on numerous occasions about her birth date, social security number, address, marital status and employment history. Most of these lies were told to gain advantages such as insurance coverage, housing and employment.
By contrast, this record does not contain evidence that puts Ms. Lacy's credibility in doubt. Further, the jury assessed her credibility and apparently chose to believe her. The factfinder is in the best position to evaluate variations in demeanor and tone of voice that influence a listener's understanding and belief in what is said, and thus, reasonable evaluations of credibility should not be disturbed on review. See Stobart, supra at 882.
More importantly, Ms. Lacy's slips, falls and twists involved some malfunction of her knee. In addition to the incident in March of 1995, Ms. Lacy twisted her knee in June of that year while getting out of a car. The problem with her knee giving out manifested itself continuously after the accident. She told her doctor on her first visit, five days after the accident in the Dollar General Store, that her knee gave way and popped as she slipped on a banana. She told her physical therapist that her knee also gave way on March 22, when she fell getting out of bed. Between the fall in December 1994 and the first arthroscopic surgery, she continually complained of pain and a grinding sensation in her knee. She received cortisone injections and returned to physical therapy. The second arthroscopic surgery revealed that she had a fissuring of the patellofemoral *195 joint, and arthritic changes in the medial and lateral tibial plateaus. While Dolgencorp argues that there were two separate injuries because Ms. Lacy described the problem following the Dollar General fall as a "giving way," and the medical records use the term "hyper-extended" to describe what happened when Ms. Lacy fell on March 22, this argument is disingenuous. Ms. Lacy is not a physician and cannot be expected to use the correct medical terminology when describing her accident.
The record shows that Ms. Lacy began having problems with her knee after the accident at Dollar General, she gave a history shortly thereafter relating the onset of her problems with her knee to that accident, and this problem persisted. In addition, Dr. Fleming testified that the giving way of Ms. Lacy's knee in March and June was compatible with the arthroscopic findings.
We find, therefore, that the record supports the jury's finding that a causal relationship existed between Ms. Lacy's December 1994 accident in the Dollar General Store and the two subsequent incidents and surgical procedures.
Dolgencorp also argues that the jury's award of lost past earnings was erroneous because Ms. Lacy's 1994 W-2 showed gross annual earnings of $37,717.81, so that her gross lost earnings, based on twenty months at that rate, would have been, at most $62,863.02 or a net loss of $45,000.
Ms. Lacy counters that her 1994 W-2 statement is misleading because she did not work after the accident on December 7. Had she worked that entire month, she would have earned $39,800.00 in 1994. In addition, because Employee Pay Profile sheets introduced in evidence by Dolgencorp indicated that she would have received an annual wage increase of between 3% and 3 1/2%, which would have raised her 1995 monthly gross to $3,416.17, and her 1996 monthly gross to $3,518.65, she argues that her actual wage loss for 21 months between the accident and the trial was $72,967.00. Ms. Lacy notes that she lost benefits, including a matching contribution for employee contributions to retirement. She argues that she lost approximately $4,200.00 in matching funds because she always contributed the maximum amount allowed.
Although Dolgencorp argues that Ms. Lacy's W-2 forms, and not the Employee Pay Profile sheets, are the "best evidence" of her income, the fact remains that the Employee Pay Profiles are in evidence. The jury, therefore, could consider them in making its award for lost wages. Based on the evidence regarding Ms. Lacy's earnings, her annual raises and the employer matching contributions that were lost, the award of $76,000 for past lost wages is supported by the record.
Dolgencorp also contends that it was error for the jury to award future lost earnings because there was no evidence that Ms. Lacy could not return to work; Ms. Lacy's doctor had not prohibited her from working and Dolgencorp's vocational rehabilitation specialist had located several jobs in the New Orleans area for which Ms. Lacy would be qualified.
The jury awarded $19,000 to Ms. Lacy for loss of future earnings. This award, which represents approximately five and one-half months lost wages, is supported by the record. Ms. Lacy, who was still in physical therapy at the time of trial, testified that she could not drive because of the various medications she was taking for pain and depression. In addition, Dr. Fleming, although not prohibiting her from working, testified that Ms. Lacy would need an additional three to six months of physical therapy.
Dolgencorp also assigns as error the award of $52,000 for past and future medicals. It argues that Ms. Lacy only submitted $42,000 in medical bills, and that she failed to establish a causal link between some of those bills and her alleged injuries. It also contends that the record contained no evidence to support an award of $10,000 for future medicals because there was no testimony regarding the cost of the six months of physical therapy that Dr. Fleming testified Ms. Lacy would need.
As to the award for past medical expenses, the transcript shows that counsel for both sides stipulated to all exhibits as to *196 authenticity and relevancy. Plaintiff's Exhibit 2 is the medical binder, which includes a medical summary, medical bills and records. Dolgencorp should have objected to relevance if the bills contained in that exhibit were not related to the accident at its store in December 1994. It did not, and the jury reasonably could infer from the record evidence that Ms. Lacy incurred $42,000 in past medical expenses.
Recovery of future medicals requires proof, by a preponderance of the evidence, that such expenses will be necessary. Rice v. ABC Ins. Co., 95-2008, p. 3 (La.App. 4 Cir. 4/3/96), 672 So.2d 1109, 1112, writ denied, 96-1113 (La.6/7/96), 674 So.2d 971. However, when the need for future medical care is established, but the cost is not, the factfinder may make a reasonable award. Guillory v. Avondale Shipyards, Inc., 448 So.2d 1281, 1287 (La.1984); Rice, supra. Dr. Fleming testified that Ms. Lacy would need an additional three to six months of physical therapy. Considering her past medical bills, including therapy and medication, we cannot say that the award of $10,000 for future medicals was not reasonable.
In its final assignment of error, Dolgencorp argues that it was error for the trial court to exclude evidence of Ms. Lacy's disability benefits. The trial court did not allow this evidence because the disability benefits were a collateral source, and a tortfeasor is not entitled to a credit for payments made to a plaintiff through collateral sources independent of the wrongdoer's contribution. Coscino v. Wolfley, 96-0702, p. 11 (La.App. 4 Cir. 6/4/97), 696 So.2d 257, 264. Dolgencorp argues that this evidence should have been allowed because it was offered to establish a motive for Ms. Lacy's not working and not to show that she already had been compensated or to claim a credit.
A trial court's ruling on the relevancy of evidence and whether the probative value of the evidence is substantially outweighed by its prejudicial effect will not be disturbed on review absent an abuse of discretion. Jones v. Peyton Place, Inc., 95-0574, p. 12, (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 763. We cannot say that the trial court abused its discretion by excluding evidence of the disability payments.

B. MS. LACY'S CROSS-APPEAL:
Ms. Lacy's appeal contends that she is entitled to an award for her mental anguish because it is an abuse of discretion to award special damages without awarding general damages.
This argument must fail. The jury made a general damage award; it gave Ms. Lacy $50,000 for her physical pain and suffering. It, however, chose not to make a separate award to her for mental anguish. We cannot say that this was an abuse of its discretion.
Likewise, although the jury determined that Ms. Lacy did have physical pain and suffering, and would need future medical care, it did not find that she was permanently disabled. Dr. Fleming testified that as of October 1996, Ms. Lacy had a 25 to 30% disability of her whole leg, but that this would improve if she lost weight and continued with physical therapy to strengthen her quadriceps. Although the doctor testified that Ms. Lacy could not stand for any extended period of time, she could handle a sedentary job, with little or no walking and no stair climbing. We cannot say, based on this record, that the jury's failure to make an award for permanent disability was manifestly erroneous.
Lastly, Ms. Lacy contends that the trial court erred by not awarding her certain deposition costs.
La.Rev.Stat. 13:4533 provides that costs of depositions used on the trial shall be taxed as costs. The depositions in question were not used in connection with any trial; the three employees all testified live at the trial on the merits, and the depositions were not admitted in evidence. Ms. Lacy argues that the term "on the trial" in the statute does not require that the depositions must be entered into the record at trial, citing Breaux v. Romero & Associates, Inc., 664 So.2d 683 (La.App. 3 Cir.1995). In Breaux, the Third Circuit awarded the cost of depositions entered in evidence on a summary judgment motion, finding that there was no distinction between a trial on a motion *197 and a trial on the merits. The depositions in Breaux actually were entered in the record; Breaux does not support Ms. Lacy's argument. A trial judge has vast discretion in awarding costs. See Smith v. Two R Drilling Co., Inc., 606 So.2d 804, 816 (La. App. 4 Cir.), writ denied, 607 So.2d 560 (La.1992). We do not find that the court abused its discretion by refusing to award the cost of these depositions.
Accordingly, for the reasons assigned, the judgment is affirmed.
AFFIRMED.
WALTZER, J., dissents with reasons.
WALTZER, Judge, dissenting with reasons.
Finding no evidence in the record to satisfy Lacy's burden of proving defendant's constructive notice under La.R.S. 9:2800.6(B) as recently interpreted in White v. Wal-Mart Stores, Inc., 97-0393 (La.9/9/97), 699 So.2d 1081, I would reverse and render judgment in favor of Dolgencorp, dismissing Lacy's suit at her cost.

STATEMENT OF RELEVANT FACTS
At about 2:00 in the afternoon of 7 December 1994, Lacy began what she described as approximately an hour's shopping at the Dollar General Store in Buras, Louisiana. She testified that as she made her way down one of the store's two main aisles leading to the check-out counters, she stepped on something soft, her foot slipped and she fell forward onto a shopping cart she was pushing. The cart inhibited her fall, but she claims she twisted or hyperextended her left knee. She walked to the checkout counter and suggested to the cashier that the aisle should be cleaned; it was determined that Lacy had slipped on a one and one-half inch piece of banana, a product not sold in the Dollar General Store.
Dawn Hartzog, store manager, left the small store fifteen to thirty minutes before the alleged accident, and, as she left, she walked down and inspected the aisle. Lacy had left the store before Hartzog's return at about 3:00 p.m.
At the time of the accident, Claudia Jefferson and Rhonda Rhodi were present at the store in connection with their duties as employees. Jefferson testified that at the beginning of her shift at 2:15 p.m., she walked down the aisle and did not see a banana on the floor. Rhodi testified that she and the other store employees inspected the aisles as they put merchandise out in the store. She testified that she had been in the main aisle throughout the day of the accident, including the time period around 2:00 p.m. and did not see a banana on the floor. The employees testified that because of the store's small size, it was easy to inspect the main aisle consistently throughout the day as they went about their duties.
The record contains no evidence tending to show the source of the banana or how long it had lain in the aisle prior to the accident. Lacy herself testified that although the banana appeared "dirty", it was still its natural off-white color.

ANALYSIS
Appellate courts in Louisiana are bound by the recent decision of the Louisiana Supreme Court in White, supra, which specifically overruled Welch v. Winn-Dixie Louisiana, Inc., 655 So.2d 309 (La.1995) as an incorrect interpretation of the statute and as contrary to what the Supreme Court characterizes as the clear and unambiguous meaning of La. R.S. 9:2800.6, defining constructive notice in the instant context. In White, the Supreme Court held with respect to the statute:
Where a statute is clear and unambiguous, and its application does not lead to absurd results, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La.Civ.Code art. 9. Courts are not free to rewrite laws to effect a purpose that is not otherwise expressed.... This statute is clear and unambiguous. The statute uses the mandatory "shall." Thus, in addition to all other elements of his cause of action, a claimant must also prove each of the enumerated requirements of Section (B). The conjunctive "and" follows Section (B)(2).... The requirement of Section (B)(2) is that the merchant created or had actual or constructive notice of the condition *198 prior to the occurrence. That is clear and unambiguous. Constructive notice, at issue here, is defined by Section (C)(1). The definition is likewise clear and unambiguous. There is a temporal element included: "such a period of time ..." The statute does not allow for the inference of constructive notice absent some showing of this temporal element. The claimant must make a positive showing of the existence of the condition prior to the fall. A defendant merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. Notwithstanding that such would require proving a negative, the statute simply does not provide for a shifting of the burden. Though there is no bright line time period, a claimant must show that "the condition existed for such a period of time ..." Whether the period of time is sufficiently lengthy that a merchant should have discovered the condition is necessarily a fact question; however, there remains the prerequisite showing of some time period. A claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice as mandated by the statute. Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. This is not an impossible burden.
za
Because La.R.S. 9:2800.6(B) clearly and unambiguously requires the claimant to prove each of its three subsections with no shifting of the burden [of proof to the defendant], and because in order to prove constructive notice the statute clearly and unambiguously requires that the claimant prove that the damage causing condition existed for some period of time prior to the occurrence, we overrule Welch, 655 So.2d 309, which allowed for a finding of constructive notice absent a showing that the condition existed for some period of time prior to the occurrence and which provided for a shifting of the burden to the defendant merchant to prove it exercised reasonable care. White, supra, at 4-6.
In White, the Supreme Court noted that, as in the instant case, plaintiff presented absolutely no evidence that the substance was on the floor for any length of time. The complete lack of temporal evidence is fatal to Lacy's cause of action as it was to White's.
The Louisiana Supreme Court does not in any way characterize its opinion in White as new law, but upholds what it repeatedly refers to as the statute's clear and unambiguous provision, which was incorrectly revised by the Welch decision. Thus, application of Welch to the instant case based on the theory that White is new substantive law which should not be applied retroactively would be improper. I also note that the Louisiana Supreme Court did not remand White's case for re-trial in the district court. According to its decree:
[W]e reverse the judgments of the trial court and the court of appeal and find for the defendant. REVERSED AND RENDERED.
Clearly, had the Supreme Court interpreted its decision in White as setting forth new substantive law, it would at the least have remanded the case to the district court to give the plaintiff the opportunity to present evidence of the temporal element of constructive notice under the statute. The court did not do so, implying that the statute reflecting the substantive law had not changed since its enactment, and was not "amended" by either Welch or White.
The disposition in White is in sharp contrast to the Louisiana Supreme Court's treatment of retroactivity of the new summary judgment law in Kaufmann v. Fleet Tire Service of Louisiana, 97-1428 (La.9/5/97), 699 So.2d 75. There, the court applied the 1997 legislative amendments to La.C.C.P. art. 966 retroactively, but remanded the case to the trial court in order that the opponent to summary judgment might be given an opportunity to meet the new burdens imposed by the legislative amendments.
Because I believe La.R.S. 9:2800.6 and the White opinion are dispositive of the instant plaintiff's claim, I must respectfully dissent *199 from the majority's disposition of this case, and would follow the direction of the Louisiana Supreme Court to reverse and render judgment in favor of the defendants.
NOTES
[1] La.Rev.Stat. 9:2800.6 was amended by La. Acts 1966, 1st Ex.Sess., No. 8, § 1, effective May 1, 1996. The amendment is not applicable to this cause of action which arose prior to the effective date.
[2] Post-argument, Dolgencorp provided this Court with the Third Circuit's opinion in Alexander v. Wal-Mart Stores, Inc., 96-1598 (La.App. 3 Cir. 2/4/98), 707 So.2d 1292, another case in which it was determined that the temporal element of constructive notice was missing. The plaintiff in Alexander, like the plaintiff in White, had not produced any positive evidence to establish that the condition had existed for some period of time before the accident, but merely had shown that it had been raining for an extended period of time and that the area in question had not been mopped for one hour before the accident. This case has not been released for publication as of the date of this opinion.
[3] Dr. Fleming testified via sworn deposition of October 28, 1996.