J^PLOTKIN, Judge.
Defendants John Musgrove, Hotard Coaches, Inc., and Carolina Casualty Insurance Co. appeal a trial court judgment awarding plaintiff Mario Conedera damages for injuries allegedly suffered in a motor vehicle accident with a Hotard bus. We affirm.
I. Facts
A Hotard bus driven by Mr. Musgrove struck the right rear quarter panel of the station wagon driven by Mr. Conedera as he was making a right turn off Poydras Street into a parking lot at the corner of Poydras and Tchoupitoulas streets in the City of New Orleans on May 7, 1994. The Hotard bus struck Mr. Conedera’s car when Mr. Conedera stopped while in the process of making the right turn to allow some pedestrians to cross in front of his automobile. As a result of the accident, Mr. Conedera, who is originally from Honduras, allegedly suffered back and neck injuries, which eventually required him to quit his job as a carpenter’s helper with E.J.D. Builders, Inc.. Some two years after the accident, Mr. Conedera underwent an anterior cervical fusion, which he claims was necessitated by the injuries he suffered in the accident.
li>Mr. Conedera filed suit against Mr. Musgrove and his employer, Hotard, as well as Hotard’s insurer, Carolina Casualty. Following a three-day trial, the trial court found in favor of Mr. Conedera, making the following awards:
General damages: $125,000.00
Past and future lost wages 208,271.00
Medical expenses 49,709.46
The defendants appeal causation and quantum.
II. Causation
First, the defendants argue that the trial court erred in finding that Mr. Conedera’s neck injury was causally related to the May 7,1994 accident between his automobile and the Hotard bus. Generally, a plaintiff seeking recovery of personal injury damages must prove by a preponderance of the evidence both the existence of an injury and a causal connection between the injury and the accident which he claims caused the injury. Lewis v. State, Through DOTD, 94-2370, p. 3 (La.4/21/95), 654 So.2d 311, 313. See also Lacy v. ABC Insurance Co., 97-1182, p. 5 (La.App. 4 Cir. 4/1/98), 712 So.2d 189, 193. In Lacy, this court further described the standards for determining the causation issue, as follows:
The test to determine if the burden has been met is whether the plaintiff proved through medical testimony that it is more likely than not that the subsequent injuries were caused by the accident. A plaintiffs injury is presumed to have resulted from an accident if (1) the plaintiff was in good health before the accident, (2) commencing with the accident, the injury and symptoms continuously manifest themselves afterwards, and (3) the medical evidence shows a reasonable connexity between the accident and the injury. The defendant may defeat the presumption by showing that some other particular incident could have caused the injury. This issue is factual and is subject to the manifest error standard of review.
*221 Id. at 5-6, 712 So.2d at 192 (citations omitted).
|3A. Presumption of causation
The record evidence in the instant case is sufficient to meet Mr. Conedera’s initial burden of proving causation because the record contains sufficient evidence to raise the presumption that Mr. Conedera’s injuries were caused by the May 7, 1994 accident between his automobile and the Hotard bus.
Concerning the first element for establishing a presumption of causation, several witnesses testified to Mr. Conedera’s good health before the accident. Both Mr. Conedera and his wife, Laura Conedera, testified that he was a very active man prior to the accident, frequently engaging in such energetic activities as playing soccer and basketball with his three children. Mrs. Conedera also stated that her husband constantly worked around the house and worked on his car when he was not at work before the accident.
On cross-examination, Mr. Conedera admitted that he had experienced “plenty” of minor work-related injuries in the course of his years of working as a carpenter’s helper; however, he said, he never had a problem with his neck prior to the accident. That testimony was corroborated by Dr. Andres G. Pedroza, Mr. Conedera’s family doctor for 17 years, who testified that Mr. Conedera had never reported any neck pain or other “cervical spine maladies” prior to the May 7, 1994 accident, though he had been treated for minor work-related injuries. Moreover, both Emory Byrd Jr., Mr. Conedera’s work supervisor, and Eric Motichek, Mr. Coned-era’s work partner, testified that Mr. Conedera had no problems performing his job duties because of neck pain prior to the accident.
Concerning the second element for establishing a presumption of causation, Mr. Conedera presented sufficient evidence to prove that, commencing with the accident, the injury and symptoms continuously manifested themselves afterwards. |4Mr. Conedera testified that he began to experience neck pain on the Sunday following the Saturday accident; Mrs. Conedera corroborated that testimony, saying her husband started complaining of neck pain the day after the accident. Moreover, when Mr. Conedera consulted Dr. William Den-nington, chiropractor, on May 10, three days after the accident, he reported that the impact of the accident caused him to be jerked forward, then backward, resulting in neck pain. Thus, Mr. Conedera proved that his neck pain commenced with the accident.
Additionally, Mr. Conedera presented sufficient evidence to prove that his neck injury and symptoms continuously manifested themselves after the accident. Mr. Conedera and his physicians testified to a continuous stream of formal medical treatment, including chiropractic manipulation, heat and massage therapy, anti-inflammatory and pain medication, and cortisone shots. Moreover, Mr. Conedera submitted to x-rays, an MRI, and a CT scan. Mrs. Conedera corroborated the testimony concerning the massage and heat therapy, which she helped administer, and also testified that Mr. Conedera tried natural medicine in an attempt to control his pain.
Much of the appellate argument presented by the defendants centers on their claim that Mr. Conedera’s work history belies his assertion that he continuously experienced pain from the time of the accident until the date of his surgery. They claim that Mr. Conedera went straight to work at his labor-intensive job immediately after the accident, and that he continued to work an average of 11- and 12-hour days for months after the accident. The defendants also point to a seven-month period between Mr. Conedera’s visits to Dr. Dennington, between August 15, 1994 and March 3, 1995, when Mr. Condera apparently did not seek formal medical attention. Additionally, the defendants claim that Mr. Conedera’s |r,injuries should not be considered causally related to the *222 accident because the medical opinion of Dr. Amilcar Correa, who performed the surgery on Mr. Conedera, was based on an incorrect medical history given by Mr. Conedera and because the surgery was not performed until 21 months after the accident.
We find no merit in the defendants’ arguments on this issue. Both Mr. Coned-era and his wife testified that he worked in pain from the time of the accident until the time he stopped working on March 19, 1996, because of the intensification of that pain to the point that work was no longer possible. The record evidence shows that Mr. Conedera was determined to work if at all possible, even against the advice of his doctors, because he wanted to support his family. Moreover, Mr. Byrd, Mr. Conedera’s supervisor, testified that Mr. Conedera’s work productivity went down after the accident, as did the hours that he worked; Mr. Byrd also stated that Mr. Condera complained of pain on the work site.
Further, Mr. Conedera told Dr. Correa that he had missed approximately 100 hours of work because of his injuries. The defendants tried to overcome that testimony by eliciting evidence from Joyce Chatt-lier David, the office manager for Mr. Conedera’s employer, concerning Mr. Conedera’s work hours after the accident, as compared to the work hours of other members of the crew. However, Mr. Conedera testified that prior to the accident, he sometimes worked 16 hours a day; after the accident he averaged less. Mr. Conedera claims that he was deprived many overtime hours because of doctors’ appointments, as well as because of pain. Finally, Mrs. Conedera testified that her husband continued with home massage, as well as heat and cold therapy, during the seven months he was not under a doctor’s care; she also said he used the natural medicine for pain during that period. Dr. IfiDennington testified to his opinion that he was treating Mr. Conedera for the same injury after the seven-month interim in treatment, as before the interim.
Concerning the 21-month period between the accident and the surgery, Mr. Conedera claims he was very afraid to undergo survey and that he therefore opted for conservative treatment for as long as possible before agreeing to the surgery. Mr. Conedera also claims that the history related to Dr. Correa was correct; the prior medical records do not reflect his true symptoms, he indicated, because English was not his first language. Dr. Cor-rea was able to get an accurate history because he spoke his native tongue, which was Spanish, he said.
Concerning the third element for establishing a presumption of causation, the record medical evidence is sufficient to show a reasonable connexity between the accident and Mr. Conedera’s injury. All of Mr. Conedera’s physicians, including Dr. Den-nington and Dr. Correa, as well as Dr. Ciro Cerrato, an internist/cardiologist who Mr. Conedera consulted between the other two doctors, testified on the record that they believed it was more likely than not that his neck and back injuries were caused by the May 7, 1994 accident between Mr. Conedera’s automobile and the Hotard bus. Dr. Correa also stated that the accident caused Mr. Conedera’s surgery, as well as the resulting limitations and anatomical disabilities.
B. Rebuttal of presumption
Because the record evidence raises the presumption of causation adopted by this court in the Lacy case, the burden shifted to the defendants to defeat that presumption by “showing some other particular incident could have caused the injury.” 97-1182, p. 6, 712 So.2d at 193. In an apparent attempt to rebut the |7presumption, the defendants elicited testimony which indicated that Mr. Coned-era’s work as a carpenter’s helper involves numerous risk factors for cervical injury. The defendants also attempted to show that Mr. Conedera’s injury could have been caused by degenerative changes. In *223 fact, the record contains evidence that the type of injury suffered by Mr. Conedera could have been caused by degenerative changes, as well as evidence that Mr. Conedera had experienced some degenerative changes. However, Dr. Correa testified twice without equivocation that Mr. Conedera’s disc injury was not degenerative. Moreover, the record evidence indicates that any degenerative changes Mr. Conedera experienced were asymptomatic prior to the accident. More importantly, no where in the record do the defendants present any evidence of a “particular incident” which might have caused Mr. Coned-era’s neck injury, which is required to overcome the presumption of causation.
Despite the fact that Mr. Conedera’s injuries are presumed to have been caused by the accident under the standards adopted by this court in Lacy, the defendants nevertheless seek to overcome the presumption, not with evidence of a “particular incident” which might have caused the injury, but by trying to show that the May 7, 1994 could not have caused the injury. Claiming that the Hotard bus was travelling no more than five miles per hour when the collision occurred, the defendants persistently call the collision a “glancing blow” which could not have caused Mr. Conedera’s neck injuries. In support of this argument, they presented the testimony of Dr. William Charles Van Buskirk, dean of the Tulane University School of Engineering, who testified concerning his “life’s work,” described as studies on acceleration injuries and the impact of forces on human bodies. Dr. Van Buskirk testified that his studies indicate that Mr. Conedera would have ^experienced only “moderate, very modest symptoms” which went away within 24 hours as a result of the accident. All of Dr. Van Buskirk’s findings were based on his assumption that the bus was going five miles per hour at the time of impact; Dr. Van Buskirk claims that Mr. Conedera would not have experienced serious injury unless the bus was travelling at least 10 miles per hour at the time of impact. The defendants claim that the trial court judge improperly discounted this “uncontradicted scientific evidence,” in deciding the case.
The defendants claim that the trial court’s errors are based in part on his incorrect finding that the Hotard bus was travelling 25 miles an hour at the time of the accident. We agree with the defendants that the record evidence does not support that conclusion. Mr. Musgrove testified that he was going approximately 25 miles per hour before he saw Mr. Conedera’s car stopped in the roadway. However, Mr. Musgrove also stated that he immediately applied the brakes and that he was going no more than five miles per hour at the time of impact. Two eyewitnesses to the accident, Ronald D. Teni-son and Michael Blaylock, both of whom were passengers on the bus, testified that the bus was going somewhere between 20 and 35 miles per hour prior to Mr. Mus-grove’s becoming aware of the dangerous situation; moreover, they both testified that Mr. Musgrove immediately applied the brakes. However, their testimony concerning the estimated speed of the bus at the time of the impact varied from five miles per hour to 15 miles per hour. Despite the fact that we do not believe that the record supports the trial court’s finding that the bus was going 25 miles per hour at the time of the impact, we nevertheless find no error in his finding that Mr. Conedera’s injuries were caused by the May 7,1994 accident.
19Unlike Dr. Van Buskirk’s experimental studies, the precise speed of the bus at the time of impact is impossible to determine in this case. Even Dr. Van Buskirk admitted that Mr. Conedera could have experienced substantial injuries if the bus was going 10 miles per hour at the time of impact. Moreover, Dr. Van Buskirk admitted that he did not examine either Mr. Conedera or the vehicles involved in the accident, but relied only on the photographs and documents given to him by the defendants for his review. In light of the *224 speculative nature of Dr. Van Buskirk’s testimony, we find no error in the trial court’s decision not to accept that testimony as the deciding factor in the case.
Finally, the defendants seek to rebut the presumption of causation by pointing to this court’s recent decision in Tchiblakian v. State Farm Mutual Automobile Insurance Co., 97-2287 (La.App. 4 Cir. 4/8/98), 711 So.2d 360. In Tchiblakian, this court affirmed a trial court judgment in favor of defendants, finding that the plaintiff had failed to establish that the rear-end colli; sion which formed the subject of the suit caused his herniated discs and depression. However, that case, unlike the instant case, involved both conflicting medical evidence and a trial court finding that the plaintiffs testimony was not credible. Thus, we find no merit in the defendants’ arguments based on the Tchiblakian case.
As demonstrated by the above recitation of the record evidence in this case, the conclusions reached by the trial judge were reasonable. When a trial court’s findings are reasonable based upon the entire record of evidence, an appellate court may not reverse the findings. Lewis, p. 5, 654 So.2d at 314. Accordingly, we find no manifest error in the trial court’s finding that Mr. Conedera’s neck and back injuries were causally related to the May 7, 1994 accident between his automobile and the Hotard bus.
| mill. Quantum
Second, the defendants contest both the $125,000 award for general damages and the $208,271 award for lost wages.
A. General damages
The trial court divided the general damage award into $100,000 for pain and suffering and $25,000 for disability. Although the two categories should be considered a single item of damages, we affirm the award because it is supported by the record, as described below.
The defendants claim the $125,000 award is excessive in light of the following alleged factors: (1) the slight impact; (2) Mr. Conedera’s pre-existing degenerative disc disease and cervical spondylosis; (3) Mr. Coriedera’s initial complaints and successful treatment; (4) lack of any subjective complaints such as radiating pain or parasthesias for 21 months; and (5) lack of any neurological findings regarding the herniated disc.
Most of these arguments are factual causation arguments, which have already been addressed above. Like the speed of the bus at the time of impact, the force of the impact is impossible to determine based on the record evidence without resort to speculation. Moreover, the record indicates that any pre-existing degenerative disc disease and cervical spondylo-sis was asymptomatic at the time of the accident. As the trial court noted in his reasons for judgment, “damages are not mitigated by the fact that the plaintiff suffered from some pre-existing illness which may have aggravated the injuries resulting from the accident.” See Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993).
|uFurther, the defendants’ argument that Mr. Conedera’s initial complaints were minor and that treatment was successful are not supported by the record. The record indicates that Mr. Conedera suffered substantial pain beginning the day after the accident and continuing to the date of the surgery and that the pain eventually required him to quit his job, despite his strong desire to continue to support his family. Moreover, the record evidence indicates that neither formal medical treatment nor home therapy was “successful” in treating his problem. In fact, his pain was not alleviated until after the surgery.
Although the defendants claim that Mr. Conedera did not experience subjective complaints such as radiating pain or par-asthesias for 21 months, the record indicates otherwise. Mr. Conedera specifically testified that only Dr. Correa got the correct medical history since he was the *225 only doctor who spoke Mr. Conedera’s native language. Dr. Correa testified that Mr. Conedera told him he started experiencing pain radiating into the upper right extremity, as well as paresthesia, two days after the May 7, 1994 accident. Finally, the defendants claim that no neurological findings regarding the herniated disc existed; however, Dr. Correa’s testimony indicates that the disc problem was evident on the MRI, which is the most effective way to diagnose a disc injury. In light of all the above evidence, we find no error in the trial court’s awarding Mr. Conedera $100,-000 for pain and suffering.
Concerning Mr. Conedera’s disability, Dr. Correa assigned Mr. Conedera a 15 percent total body disability rating after the surgery. Mr. Conedera is restricted to lifting no more than 25 to 30 pounds; he is also restricted from repetitive lifting or carrying and working over shoulder height, all requirements of his previous j ob. | ^Additionally, the evidence taken as a whole indicates that Mr. Conedera can never again perform the duties of a carpenter’s helper.
Considering both the plaintiffs pain and suffering and his disability resulting from the surgery necessitated by his injuries received in the accident, the trial court’s $125,000 general damage award is not manifestly erroneous.
B. Lost wages
Concerning the $208,271 lost wage award, the defendants again claim that Mr. Conedera failed to met his burden of proving a causal connection between the alleged injury and the accident, an argument which we have already rejected. Moreover, the economic testimony given by Dr. George Rice, professor of economics at Louisiana State University, supports the award. Dr. Rice calculated Mr. Coned-era’s past lost wages at $52,489. Moreover, doing various calculations considering various scenarios, Dr. Rice calculated Mr. Conedera’s future lost wages between a high of $434,526 and a low of $130,267. The lost wage award given by the trial court was $155,782.
Bobby S. Roberts, vocational evaluation specialist, testified that Mr. Conedera would be limited to light duty work or less in the future. Further, Mr. Roberts noted that Mr. Conedera had never done any light duty jobs in this country, meaning that he had “no readily available transferable work skills to light.” Thus, Mr. Conedera would have to be trained for any job which fell within his work restrictions. Additionally, Thomas James Stewart, another vocational rehabilitation counselor, testified that Mr. Conedera has “very limited residual employment,” because of his poor English-speaking skills which prevent him from doing such things as customer service type work. Mr. Stewart speculated that Mr. | ^Conedera might be able to secure a job as an unarmed night watchman or some other unskilled work. However, he said, an armed position would be inappropriate because Mr. Conedera has problems with his dominant right arm. Thus, Mr. Stewart felt that Mr. Conedera would be limited to minimum wage jobs. The defendant’s expert in vocational rehabilitation, evaluating, and counseling, Nancy T. Favaloro, testified that Mr. Conedera could perform unarmed security work, translating work on paper, or phone sales work. However, she admitted that she did not advise Mr. Conedera to apply for any particular jobs.
Assuming that he could perform minimum wage work, Dr. Rice calculated Mr. Conedera’s lost wages as $315,264, if Mr. Conedera, who has a high school diploma which he received while living in Honduras, returned to work a year after the trial. Under that scenario, Mr. Conedera’s lost employer contributions for hospitalization and life insurance totaled $35,779, while his future losses for his employer’s profit sharing plan totaled $18,167. However, if Mr. Conedera is considered to have less than a high school diploma because he graduated in another country, his work life expectancy is shorter and his future lost *226 wages would be $274,506, if he returned to work at minimum wage one year after the trial. Under that scenario, his lost employer contribution totaled $80,994, while his future profit-sharing losses totaled $15,738. Even if no inflation is considered, Dr. Rice calculated Mr. Conedera’s future wage losses at $208,271, assuming he returns to a minimum wage job. The defendants presented no contradictory economic evidence.- Given the record evidence, the trial court’s award for lost wages is well within its vast discretion.
|14IV. Conclusion
The trial court judgment in favor of Mr. Conedera and against Mr. Musgrove, Ho-tard Coaches, and Carolina Casualty is affirmed. The defendants are to bear all costs of the instant appeal.
AFFIRMED.
AMENDED PER CURIAM
We amend our per curiam order issued February 17, 1998, to award American Casualty Co. the benefits and medical benefits paid on behalf of Mario Conedera from the time of trial to the present date.