783 So.2d 404 (2001)
Charles LaSALLE, Individually and On Behalf of his Minor Children Bashawn LaSalle and Charles LaSalle, Jr.
v.
BENSON CAR COMPANY, INC. d/b/a Benson Acura.
No. 00-CA-1459.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2001.
*405 Morgan J. Wells, Jr., Stephen M. Larzelere, Larzelere, Picou & Wells, Metairie, LA, Attorneys for Defendants/Appellants.
Jack E. Truitt, Lionel J. Favret, III, Madisonville, LA, And Wiley J. Beevers, Gretna, LA, Attorneys for Plaintiffs/Appellees.
Panel composed of Judges GOTHARD, CHEHARDY, and McMANUS.
GOTHARD, Judge.
Plaintiffs, Charles LaSalle, individually and on behalf of his minor children, Bashawn LaSalle and Charles LaSalle, Jr.,[1] filed suit on April 16, 1997 against Benson Car Company, Inc. d/b/a Benson Acura. Plaintiffs subsequently amended its petition to name as defendants Walker Imports, Inc. d/b/a Walker Acura, successor in interest to Benson, and its liability insurer, Mid-Continent Casualty Company. (Hereinafter defendants will collectively be referred to as "Walker.")
Plaintiffs alleged that on April 18, 1996 Charles LaSalle was operating his 1992 Acura Vigor when suddenly and without warning the brakes locked up, and he and his children were thrown about the car, causing severe and crippling damage. Plaintiffs allege that Walker was negligent and/or strictly liable in its repair of the automobile's brakes.
On January 9, 1998, plaintiff and defendant entered into a stipulation that defendant was liable for the accident of April 18, 1996. Walker reserved its right to challenge *406 causation between the accident and the damages allegedly sustained by plaintiffs.
On September 25, 1998, plaintiffs withdrew their request for a jury trial, representing that the damages incurred did not exceed $50,000.00.
Trial was held on June 2, 1999 and December 13, 1999. The trial court rendered judgment on December 20, 1999 in favor of plaintiff and awarded damages of $7,437.84 for past medical expenses and $47,000.00 for general damages and future medical expenses for a total of $54,437.84.
On December 22, 1999, Walker filed a motion to amend the judgment to $50,000.00 as per the assertion that the damages did not exceed $50,000.00 made in plaintiff's request to strike jury trial. On December 28, 1999, Walker filed a motion for new trial on the same grounds.
On January 3, 2000, the trial court amended its judgment to award past medicals of $7,437.84 and future medicals in an amount so as to constitute a total damage award of $50,000.00. The trial court subsequently found that the motion for new trial was moot. On January 8, 2000, the trial court rendered a second amended judgment to correct a typographical error in the first judgment.
On January 11, 2000, Walker filed a motion for suspensive appeal. On appeal, Benson alleges that the trial court erred in finding that Mr. LaSalle's psychological problems were causally related to the accident of April 6, 1999. Walker further argues that the trial court erred in awarding excessive damages.
The following was adduced at trial. On April 18, 1996, LaSalle and his two children were traveling in his 1992 Acura after having had his brakes repaired by defendant. The brakes of the car locked unexpectedly, causing the car to come to an abrupt stop and throwing its passengers around inside. Plaintiff was not wearing a seat belt at the time of the accident, and he was "thrown up against the dashboard."
LaSalle initially sought treatment at Methodist Hospital. At that time, he told the doctors he had hit his chest on the steering wheel. He was treated for approximately five months for lumbar strain, and released from treatment on September 27, 1996. LaSalle testified at trial that he also hit his head during the accident, although he did not tell the doctors.
On May 5, 1997, LaSalle was admitted to East Jefferson General Hospital's psychiatric unit (EJGH), after he threatened violence against his wife, family and others.
After his release from EJGH, LaSalle began treatment at West Jefferson Mental Health Center, where he was seen by Dr. Mary Miller, a clinical adult psychiatrist. On his initial visit, he related to clinic personnel that he had been injured in 1988, when he fell from a crane 75 feet onto a barge, and again in April of 1996 (the instant accident). After this accident, he suffered a back injury which resolved itself. Prior to April 1996, he had no prior history of mental difficulty, but after he started hearing voices telling him his wife was having an affair. He began having problems with his temper, and he threatened his family for more information about the alleged affair. His heart would race, he would feel nervous, he could not sleep and he would not eat for days, causing a weight loss of 60 pounds. He had been admitted to East Jefferson Hospital because of psychotic threatening behavior, where he was placed on Haldol, (a neuroleptic to prevent patients from hearing things and seeing things that are not there, and having odd ideas that are not real), Cotegin (to address the side effects of Haldol), and Klonopin (to calm a manic or agitated patient). *407 The Haldol and Cotegin were continued, but he was taken off the Klonopin because it made him sleep too much.
LaSalle began weekly visits to the Mental Health Unit. On May 30, 1997, he underwent a psychiatric evaluation conducted by Dr. Miller. Her initial diagnosis was status first post episode of psychosis.
At time of trial, Dr. Miller stated that she had been treating LaSalle for three years. During the course of treatment, he had consistently been on anti-psychotic medication. His medications were changed to Risperdal (a newer, more expensive medication with fewer side effects.) He was also taking Valporic Acid, (a mood stabilizer) and Welbutrin. Twice during the course of treatment, he had stopped his medication, and each time his symptoms recurred. LaSalle had feelings of hopelessness, helplessness and depression, and he was irritable and fearful of hurting people. Dr. Miller testified that LaSalle would need to continue his medications and that his prognosis was guarded if he were to stop taking them.
Dr. Miller testified that some causes of psychosis are head injury, chemical imbalance, genetic predisposition, brain infection, and medical delirium from high blood sugar, low blood sugar or thyroid imbalance.
At trial, Dr. Miller stated that, given the history of no problems before the accident of April 1996, it was more probable than not that the accident caused the psychosis. Defendant pointed to Dr. Miller's deposition, taken around six months after she began treating plaintiff, and 1 and ½ years before her testimony at trial, where she said that she could only connect the accident and the treatment by time. Dr. Miller responded that she had gained additional information and opinions during the course of treatment.
At trial, LaSalle testified that he hit his head on the steering wheel in the accident. He was stunned, but not rendered unconscious. Prior to the accident, he had never sought psychiatric help. After the accident, his sleep patterns were disrupted, and he became "paranoid." He heard voices and he falsely accused his wife of being unfaithful. He also began thinking suicidal thoughts. Prior to the accident, he would help his children with their homework, but now he has no patience. He no longer disciplines the children because his wife is afraid he might hurt them. At time of trial he was on medications. Without these medications, he hears voices, cannot sleep, and cannot control his thought processes. The medications calm him down and helps him focus better.
Plaintiff also testified that he had been receiving social security benefits as a result of the 1988 accident, but that these benefits terminated shortly before the 1997 hospital admission. Plaintiff expressed a desire to return to work, and stated that at the time of trial he was employed by Freeman Decorating doing trade show work.
Plaintiff's wife, Terry LaSalle, testified that prior to the accident plaintiff was a loving, caring and understanding person. He was a quick thinker, and he was patient and able to help the children with their homework. He attended the PTA meetings, he disciplined the children and he was a good sleeper. Since the accident, he was not able to do any of those things. He stopped disciplining the children because he would beat them and not remember why. His memory is poor. He has difficulty getting up in the morning and he no longer helps with housework and cooking.
Mrs. LaSalle further testified that when plaintiff stopped his medication, his mind would wander, he would stop eating and *408 talking, and he would get in his car and drive aimlessly. His eyes would jiggle and shake.
Mrs. LaSalle testified that prior to the accident, plaintiff never had any psychiatric treatment. Shortly after the accident, he started complaining of headaches, and as time went on she started noticing a difference in his eyes and in his attitude. Gradually he started with the disruptive thoughts.
Mrs. LaSalle testified that she had plaintiff admitted to East Jefferson because he threatened her, the children and others, he had stopped eating, and he threatened to kill himself.
Plaintiffs bear the burden of proving every element of their case by a preponderance of the evidence, and must show that it is more likely than not, that the harm was caused by the tortious conduct of defendant. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993); Davis v. Louisiana Power & Light Co., (La.App. 5 Cir. 5/17/00), 762 So.2d 229, 233.
In Crane v. Diamond Offshore Drilling, Inc., 99-166 (La.App. 5 Cir. 9/15/99), 743 So.2d 780, 793 we noted that plaintiffs are aided in their burden of proof:
There is a legal presumption of causation when the evidence shows that the plaintiff was in good health prior to the accident, but after the accident, the symptoms of the disabling condition appear and continuously manifest themselves. Dabog v. Deris, 625 So.2d 492, 493-494 (La.1993); Tartar v. Hymes, 656 So.2d at 758; Orgeron v. Prescott, 93-926 (La.App. 5th Cir.4/14/94); 636 So.2d 1033, 1040. To overcome this presumption, the defendant must show that some other particular incident could have caused the injury in question. Maranto v. Goodyear Tire & Rubber Co., 94-2603, 94-2615, (La.2/20/95), 650 So.2d 757, 762; Spillers v. ABH Trucking Co., Inc., 30,332 (La.App. 2nd Cir.4/13/98), 713 So.2d 505, 509; Lacy v. ABC Ins. Co., 97-1182 (La.App. 4th Cir.4/1/98), 712 So.2d 189, 193. This issue is factual and subject to the manifest error review. Lacy, supra. However, the medical evidence must show there is a reasonable possibility of causal connection between the accident and the disabling condition. Dabog v. Deris, 625 So.2d at 493-494; Roig v. Travelers 694 So.2d 362 at 377; Orgeron v. Prescott, 636 So.2d at 1040.
The appellate standard of review on factual questions is well settled.
On appellate review of a factual determination, the reviewing court may not set aside the jury's findings of fact in the absence of manifest error or unless they are clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring, 283 So.2d 716 (La.1973). Where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.

Oldstein v. State Farm Mut. Auto. Ins. Co., 99-515 (La.App. 5 Cir. 10/26/99), 746 So.2d 171, 172-173.
In this case, the testimony was unrefuted that plaintiff had no psychological *409 treatment prior to the accident. After the accident, his behavior deteriorated until his wife was required to admit him to EJGH. Plaintiff stated that he hit his head during the accident. Plaintiff's treating psychiatrist opined that it was more probable than not that the accident caused his psychosis. Based on this evidence, we cannot say that the trial judge's decision was unreasonable, or that the trial court committed manifest error in determining that plaintiff's psychosis was caused by the April 1996 accident, and in awarding damages against defendant, who admitted liability for the accident.
Appellants also argue that the award of damages in this case was excessive. The standard for reviewing the award of damages is that of abuse of discretion. Reck v. Stevens, 373 So.2d 498, 501 (La. 1979). This court must determine, after an articulated analysis of the facts, whether the trial court abused its great discretion. Bostwick v. M.A.P.P. Industries, Inc., 97-791 (La.App. 5 Cir. 12/30/97), 707 So.2d 441. In reviewing the issue of whether the trier of fact abused its discretion in making an excessive award, this court must determine whether the award can be supported under the interpretation of the evidence most favorable to the plaintiff which reasonably could have been made by the fact finder. Straughter v. Ellebnawi, 99-1012 (La.App. 5 Cir. 3/22/00), 759 So.2d 874. The reviewing court must look first, not to prior awards, but to the individual circumstances of the case before it, and only after an analysis of the facts and circumstances peculiar to the case before it and the individual involved therein may the reviewing court determine the appropriateness of the award. Young v. Louisiana Medical Mut. Ins. Co., 98-522 (La. App. 5 Cir. 12/16/98), 725 So.2d 539. The discretion of the trial court in damage awards is "great", even "vast" and should rarely be overturned by the appellate court. Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
In this case, the plaintiff stipulated that his damages did not exceed $50,000.00. Given the testimony that plaintiff suffered a five month soft tissue injury to his back, and a mental injury for which he had been treated for three years, and would need medications indefinitely, and also that he had incurred past medical expenses of $7,437.84, we cannot say that the trial court erred in awarding damages in an amount to equal $50,000.00.
For the above discussed reasons, we affirm the decision of the trial court. All costs are assessed against defendants, appellants.
AFFIRMED.
NOTES
[1] On April 5, 1999, the claims of the minor children were dismissed with prejudice, pursuant to joint motion after the parties settled these claims. Plaintiff Charles LaSalle reserved the right to pursue his separate claims for personal injury against the defendant.