| .MARION F. EDWARDS, Judge.
Appellant, Robert Lay Jr., (Lay) appeals a judgment of the district court awarding him damages in the amount of $8,298.56, as the result of damages suffered in an automobile accident. We affirm.
On July 7, 1999, Lay, with his minor son Robert, a passenger, was driving a 1976 Chevrolet on La. Highway 18 when a Chevrolet Suburban driven by defendant Raymond Vickers (Vickers) pulled into his path and struck his vehicle. Colonial Penn Insurance Company (Colonial Penn) was Vickers’ liability insurer. Lay filed suit in the 29th Judicial District Court. Prior to trial, the claims for young Robert were dismissed due to settlement.
Prior to trial, Colonial Penn stipulated that Vickers was at fault in the accident. Thus, the only issue at trial was the amount of damages. The trial court heard the testimony of Lay and medical depositions of the treating physicians were entered into evidence. At the conclusion of trial, the court took the matter under advisement, and ultimately rendered judgment in the amount of $8,298.56. The Lcourt found that the only injuries proven to have been caused by the accident were soft-tissue injuries treated by Dr. Patrick Stumpf. The court found that Lay did not prove his claim for lost wages, because he presented no evidence whatsoever to show that he was under physical restrictions from a doctor which would have prevented or restricted him for doing any type of work. The court further determined that *527 Lay did not prove that his shoulder pain was caused by the accident.
After trial, in November 2001 Colonial Penn tendered a check in the amount of $9,242.81, representing the amount of judgment plus interest that Colonial Penn had calculated as of the date of tender. A Satisfaction of Judgment accompanied the check. Counsel for Lay determined to take a devolutive appeal, and the check was not negotiated. Colonial Penn substituted an Acknowledgement of Receipt of Funds for the Satisfaction of Judgment.
The relationship between counsel for the parties became acrimonious. Counsel for Lay requested Colonial Penn’s calculation of interest, principal and costs, and eventually voided the draft tender. Lay appealed in December 2001, and several days later, Colonial Penn filed a multi-faceted motion, requesting the court to acknowledge the tender, to hold that legal interest on the principal amount ceased running as of the date of receipt of tender, and to order that Lay be “barred from attempting to take any further action regarding the principal amount awarded in this Court’s October 29, 2001 final judgment. ... while a replacement draft is being processed and forwarded to replace the tendered draft ...”
The court set the motion for hearing for January 28, 2002. Subsequent to Colonial Penn’s motion, on January 8, 2002 counsel for Lay sent a letter to Colonial Penn, stating simply that “We are going to be executing on the judgment.” On January 9, 2002, Colonial Penn filed a Motion for Emergency Restraining Order, requesting the court to bar Lay or his attorney from attempting |4to execute on the judgment. The trial court granted the order and stayed all matters pending the January 28th hearing. On January 10, pursuant to a Motion to Continue filed by Lay, the matters were reset for March 25, and the court continued the restraining order in effect. Lay filed a Motion to Dissolve Temporary Restraining Order and For Damages Including Attorney’s Fees and Sanctions. The court denied the motion to dissolve, and set the remaining matter for hearing on March 25. Also set for hearing that day was a motion to reduce the estimated appeal costs filed by Lay.
On March 13, counsel for both parties filed an Acknowledgement of Receipt of Funds into the record, in the amount of $9,948.69. The pleading stated the funds were paid as the value of the judgment, including interest and costs, “to avoid ex-ecutory process and to avoid continued accrual of legal interest. All parties ... reserve all rights of appeal. Plaintiff does not agree this is full payment, only payment on account. Interest and costs are due until the check is honored.”
On March 25, 2002, counsel for Lay was not present at the time scheduled for hearing, and the court continued with its regular docket. Later on that day, when Lay’s attorney still did not appear, the court dismissed the motion for sanctions and attorney fees as well as the motion to reduce appeal costs. Colonial Penn withdrew its motion to acknowledge tender of funds. Judgment on the various motions was rendered on April 5, 2002, and Lay moved for a new trial, which motion was granted. At the hearing, counsel for Lay agreed that the check ultimately accepted was the correct amount, and all parties agreed that the restraining order was rendered moot. The court denied the request for damages and attorney fees after refusing to let Lay cross-examine counsel for Colonial Penn. Lay has also appealed that judgment.
At trial, Lay testified that he retired from Texaco shortly before the accident, on June 2, 1999. He was physically sound prior to the accident, but immediately *528 | ¡¡afterwards he began to have pain from his neck to his shoulder. He saw his doctor, Dr. Patrick Stumpf, that same day. His pain was severe. He considered his shoulder pain and neck pain to be “the same thing.” His neck and shoulder injuries did not clear up, and after his insurance changed, he went to see Dr. Russo. That physician referred him to Dr. Grimm, an orthopedic surgeon, about 13 months after the accident. His shoulder pain was not as great as his neck pain, and hence he did not complain to the doctors about it earlier. Around March 2000, he was sawing some wood with a chain saw when his shoulder pain increased.
After the accident, he received a telephone call asking him to go back to work, but he was unable to return, due to his injuries. If it were not for his physical pain, he was capable of returning to work, and would have done so. The job would have required climbing towers in vessels, which were about three hundred feet high. None of his doctors told him that he should not take the job. Lay also had a dump truck, with which he could work several days a week, but did not miss any of that work because of the accident. That was a different type of labor than was offered at Texaco. Although he was in business, he did not get any jobs. In May 2000 he got a job with the parish as a laborer, but worked in pain.
The deposition of Robert Holland, Lay’s supervisor at Texaco, was admitted into evidence. He stated that Texaco had closed a portion of its plant, and that Lay accepted a retirement package. Shortly thereafter, Texaco determined to resume its operations and Holland was able to rehire some employees as contract workers. He called Lay, who related that he would like to return, but he had been in an accident and could not physically perform the job. Lay complained that his back was injured. The rehired employees would have received between $20-22 per hour. Holland told Lay to call him if things changed. The job consisted of climbing ladders on high towers, and opening and closing valves with a large wheel. Based on what Lay told him, Lay could not have performed the job.
16Roy Griffin, a fellow employee of Lay’s at Texaco, testified by deposition that Lay told him he would have liked to return to work, but could not because of his condition. When he was rehired, he was making $20.50 per hour. The job was supposed to last from three weeks to three months.
Dr. Patrick Stumpf disclosed in his deposition that he treated Lay prior to the accident for diabetes. Lay came to him on July 7,1999 at which time he stated that he had been in a motor vehicle accident, and complained of pain in his neck, right knee, hands, and left elbow. He had a decreased range of motion and pain on motion in his neck. There was a paracervical muscle spasm in the back of his neck, an abrasion over his left elbow, and pain on motion in his right knee. The physician diagnosed a contusion of the right knee and left elbow, neck sprain, and hand strain. He prescribed a muscle relaxer and pain medication. Activities were not restricted at that time. Lay saw Dr. Stumpf again on August 3, 1999, at which time he had complaints about neck pain related to the accident. At this time, while there was some posterior cervical muscle spasm, Lay had a good range of motion in the neck. In November 1999, Lay was still complaining of neck pain and still had mild spasms and pain on motion. That was the last time Dr. Stumpf treated Lay prior to his deposition. If Lay had developed bursitis as a result of the accident, he would have had shoulder complaints in the *529 two months following the accident, and Dr. Stumpf had no such notations of pain.
Dr. Michael Russo, a family practitioner, first saw Lay in August 2000 for diabetic treatment, neck and shoulder problems. Dr. Russo diagnosed bursitis that, according to his testimony, could have developed without trauma. There was no direct evidence that the accident was directly related to the bursitis, and if it were, it would have shown up sooner than three months after the accident. However, it was not impossible that the shoulder problem developed as a result of some of the injuries. The bursitis was treated conservatively with medication and exercise. On phis visit in November 2000, he continued to 'complain of shoulder pain as well as neck pain, and x-rays were recommended. His x-ray showed no fracture or disease, and the diagnosis was cervical spasm, which is usually an acute problem rather than a chronic condition. Shoulder x-rays appeared normal, although Lay still had pain. Physical therapy and injections were recommended, but Lay did not follow up. If he had no problems before the accident, there must have been some causal relationship between the accident and the pain. It would not be inconceivable for Lay to have had a neck problem that led to a shoulder problem. Although there is no proof that his shoulder problems have been present since the accident, based on the evidence there was a reasonable possibility of a connection.
Dr. Matthew Grimm, an orthopedic surgeon, saw Lay in December 2000. He deposed that based on his examination and Lay’s statements to him, he felt that Lay had a rotator cuff tendonitis and neck pain as a result of the accident. After age 50, rotator cuff injuries are very common and are due to wear and tear. Lay was 56 at the time he saw Dr. Grimm. Dr. Grimm gave Lay an anesthetic and inflammatory injection. He saw Lay again in January and February 2001, at which time he had improved although he still had stiffness in his shoulder. Physical therapy was recommended for his shoulder. If Lay had no shoulder pain before the accident, Dr. Grimm would find it reasonably possible that the accident caused the injury, although he could not so state with medical certainty.
Lay first assigns as error the failure of the trial court to grant damages for lost earnings or lost earning capacity. The reasons for judgment indicate that the trial court questioned Lay’s credibility on the issue of lost income. The court noted that in his deposition, Lay stated that he was not making a claim for lost wages, yet at trial he maintained that he had lost out on a job which he could not physically perform. The deposition of Mr. Holland verifies that Lay was called to return to work, and that he declined due to pain from his accident. However, as the trial |Rcourt also noted, there was no notation from any treating physician that Lay was unable to perform any physical activity. Further, Lay testified that the reason he did not earn income with his dump truck was due to the lack of business opportunities, and that he worked with it when he had jobs.
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact’s findings.[1] Based on the record in its entirety, we find nothing to indicate an abuse of the trial court’s dis *530 cretion. This assignment of error is without merit.
Lay also urges that the trial court erred in failing to award adequate damages for both his neck and shoulder injuries. In brief, Lay appears to argue that he should have been granted damages for injuries to his shoulder. The court found that each of Lay’s doctors thought the shoulder symptoms should have manifested themselves earlier had they been caused by the accident.
Lay testified that he did not have any pain moving his shoulder when Dr. Stumpf treated him, and did not feel a substantial increase in pain until March 2000 when he was sawing logs. Nonetheless, after November 1999, he did not see any physician until Dr. Russo in August 2000. The strongest testimony from the physicians who treated Lay was that there was a reasonable possibility that his shoulder pain was related to the accident. Each physician stated he would have expected an accident-related shoulder injury to manifest itself prior to August 2000.
In a personal injury suit, plaintiff bears the burden of proving a causal relationship between the injury sustained and the accident that caused the injury.[2] |aThe test for determining the causal relationship between the accident and subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident.[3] Disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.[4]
The testimony of his treating physicians relative to causation was based on the hypothesis posed by counsel that the pain manifested itself continuously after the accident. The only evidence that Lay began to suffer constant shoulder pain immediately after the accident was his testimony, and that was ambiguous, considering that Lay admitted he had no complaint of shoulder pain when being treated immediately afterward by Dr. Stumpf. He did not seek medical treatment for that condition for 13 months, 5 months after he felt pain while using a chain saw. Lay’s burden of proof is preponderance of the evidence. After reviewing the evidence presented, we see no manifest error in the finding of the trial court that Lay did not prove a causal connection between his shoulder pain and the accident. This assignment of error is without merit.
In his third assignment of error, Lay avers the trial court erred in granting the temporary restraining order.
Under La. C.C.P. art.2088, the jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches on the granting of the order of appeal, in the case of a devolutive appeal. 110Thereafter, the trial court has jurisdiction in the case only over those matters *531 not renewable under the appeal, including the right to:
(1) Allow the taking of a deposition
(2) Extend the return day of the appeal
(3) Make, or permit the making of, a written narrative of the facts of the case
(4) Correct any misstatement, irregularity, informality, or omission of the trial record
(5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the-form, substance, and sufficiency of the appeal bond, and permit the curing thereof
(6) Grant an appeal to another party
(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal
(8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658
(9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or
(10)Set and tax costs and expert witness fees.
Although the trial court had jurisdiction to execute the judgment, which had been appealed devolutively, we find no authority in the article permitting the court to issue an order restraining Lay from attempting to execute on his judgment. Because the court was without jurisdiction to do so, the restraining order was improperly granted.
The court may allow damages for the wrongful issuance of a temporary restraining order or preliminary injunction on a motion to dissolve or on a reconventional demand. Attorney’s fees for the services rendered in connection with the dissolution of a restraining order or preliminary injunction may be included as an element of damages whether the restraining order or preliminary injunction is dissolved on motion or after trial on the merits.[5]
|nThe ruling of a trial judge on the issue of damages under Article 3608 should not be disturbed on appeal absent a clear abuse of discretion.[6] The word “wrongful” in Article 3608 simply means incorrect, or the result of a mistake, and does not imply malice or bad faith on the part of the plaintiff.[7] In the present case, Lay’s attorney did not appear at the hearing on his motion to dissolve, and the record does not indicate that he attempted to continue the hearing set for that date. The court was within its discretion to dismiss the motion under La.C.C.P. art. 1672.
Moreover, the court granted a new trial, at which time counsel for Lay failed to produce any evidence of damages or of attorney fees. The trial court gave him leave to proffer the testimony of Colonial Penn’s attorney, which testimony Lay sought to introduce at the hearing. However, Lay did not make the proffer, and the record is devoid of any evidence of damages suffered by Lay in the granting of the injunction. We see no error ih the refusal of the trial court to grant either damages or attorney fees. This assignment of error is without merit.
*532 For the foregoing reasons, the judgment is affirmed. Plaintiff is assessed all costs of this appeal.
AFFIRMED.

. Bernard v. Cox Communications, Inc., 01-1321(La.App. 5 Cir. 3/26/02) 815 So.2d 259, writ denied 2002-C-1157 (La.6/14/2002), 818 So.2d 782, citing Rosell v. ESCO, 549 So.2d 840, 844-45 (La.1989).

. American Motorist Insurance Co. v. American Rent-All, Inc., 579 So.2d 429 (La.1991); Maranto v. Goodyear Tire & Rubber Co., 94-2603 (La.2/20/95), 650 So.2d 757.

. Mart v. Hill, 505 So.2d 1120 (La.1987); Maranto v. Goodyear Tire & Rubber Co., supra.

. Housley v. Cerise, 579 So.2d 973, (La.1991); LaSalle v. Benson Car Co., Inc., 00-1459(La.App. 5 Cir. 1/30/01), 783 So.2d 404.

. La. C.C.P. art. 3608.

. Arco Oil & Gas Co., a Div. of Atlantic Richfield Co. v. DeShazer 98-1487 (La.1/20/99), 728 So.2d 841, 844.

.Id., at 844.