PAUL A. BONIN, Judge.
 

 ^Reginald Dunomes filed a damages suit for personal injuries against the Plaque-mines Parish Government
 
 [1]
 
 (“the parish”) arising out of a motor vehicle collision that occurred on January 30, 2001. Judgment was rendered against the parish for a total damage award of $42,003. Both parties appeal the amount of damages.
 
 [2]
 
 For the reasons which follow, we affirm.
 

 The Damages Award by the Trial Court
 

 The trial judge made the following damage awards:
 

 General damages $30,000
 

 Past medical $ 5,003
 

 Future medical $ 2,000
 

 Loss of earning capacity $ 5,000
 

 Total $42,003
 

 On the one hand, the parish generally contends that the total award is excessive and specifically argues that award for “lost wages” is unsupported by the |2evidence. On the other hand, Mr. Dunomes contends that the general damages award is inadequate. Since neither party disputes the special damages award for past medical expenses, we will pretermit that from our discussion.
 

 We review the general damages award under the standard set forth in
 
 Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257, 1260-61 (La.1993):
 

 The initial inquiry is whether the award for the particular injuries and their ef
 
 *245
 
 fects under the particular circumstances on the particular injured person is a clear abuse of the “much discretion” of the trier of fact.... Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion....
 

 (ellipses indicate citations omitted)
 

 Although the standard for appellate review of general damage awards “is difficult to express and is necessarily non-specific,” the controlling theme announced is that:
 

 the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
 
 Id.
 
 at 1261.
 

 Youn
 
 also guides us in our review of special damages awards, such as future medical expenses as well as lost wages and loss of earning capacity.
 

 Youn,
 
 623 So.2d at 1262, quoted approvingly from its earlier decision in
 
 Stiles v. K Mart Corporation,
 
 597 So.2d 1012, 1013 (La.1982):
 

 [aWhen the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. La.Code of Civ. Proc. Art. 2164.
 

 Stiles
 
 was in line with the Louisiana Supreme Court’s earlier ruling that “[i]n the absence of any firm monetary estimates by expert witnesses,” a court should consider “the amount of past medical expenses” in setting a future medical damage award.
 
 Guillory v. Avondale Shipyards, Inc.,
 
 448 So.2d 1281, 1287 (La.1984).
 

 We have held in
 
 Lacy v. ABC Insurance Co.,
 
 97-1182, p. 13 (La.App. 4 Cir. 4/1/98), 712 So.2d 189, 196, that
 

 Recovery of future medicals requires proof, by a preponderance of the evidence, that such expenses will be necessary. ... However, when the need for future medical care is established, but the cost is not, the factfinder may make a reasonable award.
 

 (ellipses indicate omitted citations)
 

 Youn
 
 also approvingly referenced the court’s earlier holding in
 
 Jordan v. Travelers Insurance Company,
 
 257 La. 995, 1006-07, 245 So.2d 151, 155 (1971), wherein the court fixed an award for loss of earnings based on “less-than-perfect evidence.”
 
 Youn,
 
 623 So.2d at 1261-62. In
 
 Jordan,
 
 the court held:
 

 Where there is a legal right to recovery but the damages cannot be exactly estimated, the courts have reasonable discretion to assess same based upon all the facts and circumstances of the case.... This latter principle is also applicable, where the fact of loss of earnings or earning power, past or future, is proved, but not any exact amount....
 

 (ellipses indicate omitted citations)
 

 Special damages must be proved by a preponderance of the evidence, but they need not be proved with precision. The trial court’s award need only be reasonable.
 
 *246
 

 See Guillory v. Lee,
 
 09-0075, p. 14 (La.6/26/09), 16 So.3d 1104, 1116.
 

 \/Ihe Particulars and the General Damage Award
 

 On January 30, 2001, the parish’s employee backed its garbage truck into Mr. Dunomes’ vehicle in what the trial court in its Reasons for Judgment characterized as a low impact collision. Mr. Dunomes was first treated for his injuries that same day. At the time he was working a “14 off-14 on” schedule as a roughneck in the oilfield offshore. He was treated for his injuries until August 15, 2005, when the treating neurosurgeon, Dr. Kenneth Vogel, recommended continued conservative care.
 

 The Resolved 1999 Accident Injury
 

 We will detail the full course of his treatment below, but pause to explain that prior to the accident which is the subject of this lawsuit, Mr. Dunomes had been in a motor vehicle accident in Texas on November 14, 1999, for which he received his last medical treatment on December 6, 1999. He unquestionably sustained injuries to his neck area and he continued to experience some pain after he was discharged. The parish infers that Mr. Dunomes was not fully recovered from the 1999 accident when this one occurred. However, as a result of the 1999 accident, Mr. Dunomes sustained a left facet fracture at C4 which healed so completely that x-rays made on December 6, 1999, one month after that accident, did not show the fracture. Dr. Vogel stated in deposition that the C4 fracture had healed, and related Mr. Du-nomes’ injuries at C3-4 and L5-S1 to the 2001 accident at issue in this lawsuit.
 

 The January 2001 Accident
 

 On February 1, 2001, two days after he was initially treated at the Plaque-mines Parish Comprehensive Care Center, Mr. Dunomes began treatment by |fiDr. A.Z. Blamphin at the Westbank Physicians Rehab. His complaints were neck pain, tingling in one hand, and numbness in the low back. Mr. Dunomes underwent a regimen of medication, Phrenilin Forte, and physical therapy, ultrasound and massage. On February 16, 2001, his treating physician, Dr. Kumar, released him to return to work while continuing to periodically examine him and conservatively treat him for his complaints and symptoms of neck and back pain. On March 21, 2001, Dr. Morte-za Shamsnia performed cervical nerve conduction studies which showed abnormalities. On May 17, 2001, after reviewing the studies, Dr. Kumar referred Mr. Dunomes to Dr. Kenneth Vogel for his ongoing neck pain and complaints of numbness in light of the test results. In the months of treatment since the 2001 accident, Mr. Du-nomes’ low back pain went from “severe” to “severe on full range of motion.” His cervical spine and paravertebral muscles remained severely painful, and he suffered numbness in both arms and fingers.
 

 Dr. Vogel recommended physical therapy and continued conservative care while he more fully evaluated Mr. Dunomes’ condition. On November 19, 2001, Dr. Vogel noted cervical and lumbosacral pain and numbness of both hands, and diagnosed chronic lumbosacral strain and herniated cervical disc versus cervical spondylosis. On April 29, 2002, Dr. Vogel diagnosed a herniated disc with possible cervical segmental instability, and recommended a cervical myelogram and CAT scan, possible left cervical facet arthrogram and block plus appropriate care. He considered Mr. Dunomes to be a surgical candidate pending results of the cervical testing and medical clearance from an internal medicine consultant. However, further testing was not approved. On November 19, 2002, Dr. Vogel recommended conservative care. Mr. Dunomes last saw Dr. Vogel on August 15, 2005, when Dr. Vogel recom
 
 *247
 
 mended continued conservative care. Dr. Vogel |finoted — three and a half months before Mr. Dunomes’ November 2005 accident — that Mr. Dunomes continued to suffer cervical, left arm, and lumbosacral pain. Dr. Vogel stated in deposition: “The problem that he [Mr. Dunomes] had in August '05 is the same one he’s having now” at the examination on February 22, 2007. Dr. Vogel stated that more probably than not, in all medical probability, Mr. Dunomes’ symptoms are related to the motor vehicle accident on January 30, 2001.
 

 Dr. Vogel reported to Dr. Blamphin on February 22, 2007, that Mr. Dunomes exhibited mild limitation of motion in all directions, with mild muscle spasm bilaterally, mild brachial plexus tenderness bilaterally, left greater than the right. Mr. Dunomes was noted to be left-handed. In the low back area, examination revealed bilateral tenderness of the lower facets but no muscle spasm. At the time of trial Mr. Dunomes was still experiencing pain and suffering physical deficits in his dominant hand use, which were related to the 2001 accident.
 

 Mr. Dunomes takes anti-inflammatory medication, has impaired fine motor movement in his dominant left hand, continual neck pain, and loss of feeling in his hand that causes him to drop things. He has a cervical herniated C3^4 disc. He has to make adjustments for his work and daily activities (such as fishing, dressing himself).
 

 Brief Aggravation of Symptoms by the November 2005 Accident
 

 Subsequent to the 2001 accident, in late October or in November 2005, Mr. Du-nomes was in a motor vehicle accident in Lafayette, Louisiana, for which he sought treatment for injuries to his shoulder, neck and lower back until March 6, 2006, when he asked to be discharged. The parish infers that he must have fully recovered from his 2001 injuries at the time he requested discharge from medical care after his 2005 accident.
 

 |7Pr. Vogel expressed his opinion that the motor vehicle accident on or around November 23, 2005, aggravated Mr. Du-nomes’ injuries from the January 2001 incident for a period of about four months. Mr. Dunomes was seen at a Lafayette medical clinic five days after the 2005 accident, complaining of left shoulder, neck and lower back pain. Mr. Dunomes indicated on his intake form for the clinic
 
 [3]
 
 that he had neck or back problems before the 2005 accident. He visited the clinic again on December 30, 2005, and on February 6, 2006. The left shoulder problem resolved but he continued with “some level of neck and back discomfort” on February 6, 2006, whereupon Dr. Mack testified that he recommended that Mr. Dunomes consult an orthopedist and have MRI testing. Mr. Dunomes asked to be discharged on March 3, 2006.
 

 The trial court’s assessment of the particular injuries to this particular person under these particular circumstances is not manifestly erroneous. The ensuing general damages award of $30,000 is within the appropriate range of adequate awards and the specific amount of the award is not an abuse of the trial court’s vast discretion. We, therefore, reject both the parish’s contention that the award is excessive and Mr. Dunomes’ contention that it is inadequate.
 

 The Special Damage Awards
 

 Dr. Vogel testified that Mr. Du-nomes will require future conservative
 
 *248
 
 medical treatment for his injuries. This was not contradicted by any medical testimony. Mr. Dunomes proved this item of damage by a preponderance of the evidence. No estimate of the costs of the treatments was made by Dr. Vogel. Considering the cost of past medical treatments, the trial court’s decision to make a | ^minimal award of $2,000 is reasonable under the circumstances.
 
 Lacy, supra.,
 
 97-1182, p. 13, 712 So.2d at 196;
 
 Guillory v. Avondale Shipyards, Inc.,
 
 448 So.2d 1281 at 1287.
 

 Likewise, Mr. Dunomes established by a preponderance of the evidence that he will suffer some minor diminution in hand strength which would require him to work in pain
 
 [4]
 
 if he were to return to the oilfield as a roughneck. This impact on his ability to return to employment as a roughneck, work for which he is otherwise qualified, merits an award to reasonably compensate him for this diminution in his earning capacity. The award, a low amount of money, is reasonable, especially when we consider that Mr. Dunomes is currently able to engage in other available employment as a safety inspector, which is less physically demanding and is compensated at a rate of pay higher than that earned by a roughneck. Nevertheless, being recently hired as a safety inspector, and in an uncertain economy, Mr. Du-nomes could experience a change in his employment situation. We noted in
 
 Corliss v. Elevating Boats, Inc.,
 
 599 So.2d 434, 437 (La.App. 4 Cir. 5/12/1992):
 

 The law allows not merely for loss of future earnings, but rather for loss of earning capacity. It is well known that under present economic conditions and under the current insurance rates paid by employers, employers will not hire a person with physical disabilities, other than under federally subsidized programs for the hiring of the handicapped, for fear of increases in their insurance. The existence of the injury places plaintiff at a distinct disadvantage in the marketplace of job competition. Likewise the earning capacity loss for which plaintiff is compensated is not loss of future earnings, but is lost future earning capacity. Plaintiff was in his chosen profession at the time of the accident. He is compensated for the loss of that profession. If plaintiff is able to compensate for his injury by retraining himself to engage in another profession, he is not penalized by his efforts to do so, but rather is still awarded damages for the lost profession.
 

 |9The Louisiana Supreme Court in
 
 Folse v. Fakouri,
 
 371 So.2d 1120, 1123 (La.5/21/1979), defined “lack of earning capacity” as follows: “[Wjhile his earning capacity at the time of the injury is relevant, it is not necessarily determinative of his future ability to earn.... Damages should be estimated on the injured person’s ability to earn money, rather than what he actually earned before the injury.” “The theory is that the injury done him has deprived him of a capacity he would have been entitled to enjoy even though he never profited from it monetarily.”
 
 See also Hobgood v. Aucoin,
 
 574 So.2d 344, 346 (La.11/8/1990) and
 
 Finnie v. Vallee,
 
 620 So.2d 897, 900 (La.App. 4 Cir. 5/27/1993).
 

 Therefore, we conclude that the trial court did not abuse its discretion in these reasonable special damage awards.
 

 Conclusion
 

 We have found that the trial court did not abuse its great discretion in the gener
 
 *249
 
 al damage award and that the awards for special damages, being proven by a preponderance of the evidence and being reasonable, were also within the trial court’s discretion. Primarily because the parish also framed its contention that the
 
 in globo
 
 award is excessive, we have parenthetically reviewed the total award as was done in Guillory,
 
 supra,
 
 448 So.2d 1281, 1286-87 (La.2/27/1984), and conclude that the total award was within the trial court’s discretion.
 

 Decree
 

 The judgment of the trial court is affirmed.
 

 AFFIRMED.
 

 [1]
 

 . The parish’s employee-driver was also sued as a party defendant, but judgment was not rendered against him. No appeal was taken from the failure to render judgment against the employee.
 

 [2]
 

 . Liability of the parish is not an issue in this appeal.
 

 [3]
 

 . The clinic physician, Dr. Mack, testified in his deposition that the clinic and its staff were in the midst of post-hurricane crowding and rush at the time of Mr. Dunomes' visits after the 2005 accident.
 

 [4]
 

 . The court, or a reasonable trier of fact, could have concluded that were Mr. Dunomes to resume his work as a roughneck he would not merely be working in some pain but also with some degree of danger attributable to his hand deficits.