MADELEINE M. LANDRIEU, Judge.
| ^Defendants, Cheema Properties, LLC, and M & S Oil Services, LLC,[1] appeal the *263 trial court’s judgment awarding the plaintiff, Marilyn Cline, damages sustained when she fell and injured herself on the premises of the defendants’ gasoline service station. For the reasons that follow, we affirm the judgment of the trial court.
FACTS AND PROCEEDINGS BELOW
On November 24, 2009, Ms. Cline filed suit alleging that on November 9, 2009, she tripped on an uneven portion of the cement at the Belle Chasse Shell, causing her to fall and strike her head on an ice machine. Ms. Cline further alleged that as a result of this fall, she received fourteen stitches in her head, fractured two cervical vertebrae which required surgical repair, and suffered various other injuries which impaired her lifestyle. She also alleged that this accident was solely and completely the fault of the defendants because they allowed an unreasonably | aharmful, defective condition to exist on the premises of their business despite having actual or constructive notice of the defect.
The matter was tried in a bench trial on February 24 and 25, 2011. On April 14, 2011, the trial court rendered judgment in favor of Ms. Cline against the two remaining defendants, awarding a total of $886,385.79 in damages ($280,500.00 for past and future pain and suffering, mental anguish and loss of enjoyment of life, $67,685.79 for past medical expenses, and $38,250.00 for future medical expenses), plus court costs and judicial interest.
In extensive written Reasons for Judgment, the trial court stated that the plaintiff had met her burden of proving the defendants’ liability pursuant to La. R.S. 9:2800.6 A, which provides the criteria for determining when a merchant is liable to a business patron for injuries incurred as a result of a defective or unsafe condition existing on the merchant’s premises.[2] The trial court concluded that the uneven pavement at the service station created an unreasonable risk of harm, that the defendants had failed to exercise reasonable care in repairing and/or warning patrons about this condition despite having actual or constructive notice of it, and that this defective condition was the cause-in-fact of the plaintiffs injuries. Although the trial court assigned 85% of the fault to the defendants, it also found the plaintiff to be 15% at fault because she “contributed, either through inattention or as a result of her preexisting medical condition, to her injuries.” Additionally, the trial judge explained how he had determined the amounts awarded for past medical expenses, future medical expenses and general damages, specifically noting that the damages awarded in the judgment had been calculated by reducing |4the original amounts (namely: $79,571.51 in past medical expenses, $45,000.00 in future medical expenses, and $330,000.00 in general damages) by 15% to account for the fault of the plaintiff.
ISSUES
On appeal, the defendants contend that the trial court erred by:
(1) Finding that the elevation differential at the Belle Chasse Shell parking lot created an unreasonable risk of harm, and relying upon the testimony of the plaintiffs expert, Dr. George Hammitt, to reach this conclusion;
*264 (2) Assessing the plaintiff only 15% of the fault;
(3) Awarding future medical expenses without sufficient evidentiary support; and
(4) Awarding an excessive amount of general damages.
STANDARD OF REVIEW
We review the factual findings of the trial court pursuant to the manifest error standard, as set forth by Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). Accordingly, we may not set aside the trial court’s findings unless, in view of the entire record, they are manifestly erroneous or clearly wrong. Moreover, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact may not be set aside upon review. Id.
Applying the manifest error standard to an award of special damages, such as medical expenses, requires the appellate court to employ a two-step analysis based upon the entire record. First, we must conclude that there is no reasonable factual basis for the trial court’s award, and second, we must conclude that the award is clearly wrong. Kaiser v. Hardin, 2006-2092, pp. 11-12 (La.4/11/07), 953 So.2d 802, 810.
1 BGeneral damage awards, which are inherently speculative in nature and cannot be fixed with legal certainty, are reviewed according to an abuse of discretion standard. Bouquet v. Wal-Mart Stores, Inc., 2008-0309, p. 4 (La.4/4/08), 979 So.2d 456, 459. Pursuant to this standard, the trier of fact is afforded vast discretion because it is in the best position to evaluate the credibility of witnesses and view the evidence firsthand. Id. at pp. 4-5. Thus, the appellate court should rarely disturb such an award, doing so only when an articulated analysis of the particular facts and circumstances of the case reveals an abuse of discretion. Id., p. 5.
DISCUSSION
I. Whether the Condition Presented an Unreasonable Risk of Harm
Defendants first contend the trial court committed manifest error by finding that the uneven portion of concrete at the Belle Chasse Shell presented an unreasonable risk of harm. La. R.S. 9:2800.6 provides, in pertinent part:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
| n(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
*265 The defendants contend the trial court erred by finding that the plaintiff met the first prong of the three-part burden of proof set forth in the above-quoted statute, i.e., the existence of an unreasonable risk of harm. Specifically, they argue that the trial court failed to perform a risk-utility balancing test when it determined that an approximately 1 ⅜ inch elevation change in an expansion joint between two concrete slabs presented an unreasonable risk of harm to a prudent person using ordinary care under the circumstances. To employ such a balancing test, the trial court would have had to balance the gravity and risk of the harm against the individual and societal rights and obligations, the social utility and the cost and feasibility of repair. See Boyle v. Board of Supervisors, Louisiana State Univ., 96-1158, p. 5 (La.1/14/97), 685 So.2d 1080, 1083. Stated more simply, the trier of fact “must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others?” Reed v. Wal-Mart Stores, Inc., 97-1174, p. 5 (La.3/4/98), 708 So.2d 362, 365.
It is evident from its Reasons for Judgment that the trial court performed a risk-utility balancing test before reaching its conclusion. In those Reasons, the court discussed Reed v. Wal-Mart and also specifically recognized that the decision places a duty upon the trier of fact to balance the risk of harm presented by the defect against its social utility and the cost and feasibility of repair. In so balancing, the trial court considered the deposition testimony of Dr. [7George Hammitt, the plaintiffs expert in civil engineering, concrete and accident reconstruction, as well as that of James Danner, the defendant’s expert in the same subjects. Dr. Hammitt testified that the spot where Ms. Cline had tripped was in a natural path of ingress and egress to the service station’s convenience store. Based upon photographs of the site, he estimated that the difference in elevation was at least two inches, and stated that any abrupt change in elevation greater than one-half inch would violate several building/safety codes adopted in Louisiana, including the Americans with Disabilities Act and the Life Safety Code. Dr. Hammitt opined that the defect would cost about $300.00 to repair by overlaying the concrete in the specific area, which he estimated to be about fourteen feet by two feet. He opined that the defect presented an unreasonable risk of harm.
Mr. Danner, who had taken his own measurements at the site of the accident, testified that the greatest elevation differential he had found was 1 ¼ inches. He opined that this differential was due to soil subsidence common in southeastern Louisiana. Although he did not give a precise estimate of the cost of repairing the defect, he opined that the cost would be higher than Dr. Hammitt’s estimate. Unlike Dr. Hammitt, Mr. Danner did not believe that a concrete overlay would permanently fix the problem; instead, he opined that the old concrete would have to be removed and replaced, which would require the area to be cordoned off for about seven days.
Ultimately, the two experts disagreed as to whether the uneven concrete constituted an unreasonable risk of harm. As reflected in the Reasons for |sJudgment, the trial judge considered all the above-referenced factors, employed the appropriate balancing test, and concluded the evidence supported a finding that the defect did present an unreasonable risk of harm.
Nevertheless, defendants specifically argue that the trial court committed manifest error by relying upon the testimony of Dr. Hammitt with regard to building and safety codes. They contend that these *266 codes are inapplicable to the instant situation because they are design codes which provide standards for original construction, and do not require property owners to change existing conditions. Finally, they argue that Dr. Hammitt’s opinion as to the existence of an unreasonable risk of harm was improperly based upon the fact that any difference in elevation greater than one-half inch would violate these codes.
We first note that, despite defendants’ suggestion to the contrary, Dr. Hammitt did not testify that any abrupt elevation change greater than one-half inch would present an unreasonable risk of harm; he testified that this particular concrete differential, which measured at least one and one quarter inches according to all the evidence, constituted an unreasonable risk of harm. Moreover, Dr. Hammitt admitted that he did not know when the service station had been built or whether it had complied with the building codes in effect at that time, but indicated that he was merely using the codes as guidelines to help him determine whether the uneven concrete at the Belle Chasse Shell constituted an unreasonable risk of harm. The trial judge heard this testimony and had the responsibility to give it the weight he believed it deserved. Moreover, we note that the trial judge did not rely 19solely on Dr. Hammitt’s testimony in making his determination. He also viewed photographs of the site placed in evidence and considered the other evidence presented. We therefore do not find that the trial court erred by relying to some degree upon Dr. Hammitt’s testimony. Pursuant to the manifest error standard of review, where there are two permissible views of the evidence, such as were presented by the two experts herein, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. See Rosell v. ESCO, supra, at 844.
Finally, the defendants suggest that the trial court’s finding that the elevation differential in the parking lot created an unreasonable risk of harm is not in accordance with Louisiana jurisprudence. In support of this contention, the defendants cite four cases that they suggest are factually similar to the instant case. In two of those cases, the Louisiana Supreme Court reversed the trial and appellate court’s conclusions that the defective pavement in question presented an unreasonable risk of harm. See Reed v. Wal-Mart, supra, wherein the Supreme Court held that % to ½ inch variations in elevation along an expansion joint in a highly trafficked area of the Wal-Mart parking lot did not create an unreasonable risk of harm; and Boyle v. Board of Supervisors, 96-1158 (La.1/14/97), 685 So.2d 1080, wherein the Supreme Court held that a ½ to 1 inch depression in a sidewalk on a university campus did not create an unreasonable risk of harm. We note that both of these cases involved elevation differentials that were smaller than the one present in the instant case. The defendants cite two other cases, Shipp v. City of Alexandria, 395 So.2d 727 (La.1981), and White v. City of Alexandria, 216 La. 308, 43 So.2d |10618 (1949), both of which involved a greater elevation difference (1 ½ to 2 inches), which the Supreme Court ruled was not unreasonably dangerous. These two cases are distinguishable from the instant case, however, because they both involved a defect in a public sidewalk rather than in a business’s private parking lot. Because a municipality is responsible for the maintenance of a large network of sidewalks and streets, the factors that must be considered in the balancing equation are inherently different than in a case against a *267 business owner.[3]
To controvert the defendants’ argument that the trial court’s finding herein does not comport with the jurisprudence, plaintiffs cite the Louisiana Supreme Court’s decision in Sistler v. Liberty Mutual Insurance Co., 558 So.2d 1106 (La.1990), in which the Court upheld the trial court’s finding that a 1 inch difference in elevation at the entrance of a restaurant was an unreasonably dangerous condition that caused a patron of the restaurant to fall. In view of all the jurisprudence, we cannot accept the defendants’ argument that the trial court’s finding in the instant case does not comport with the prevailing case law.
Accordingly, after reviewing the record we do not find that the trial court committed manifest error in determining that the uneven concrete that caused Ms. Cline’s fall presented an unreasonable risk of harm.
lull. Allocation of Fault
Defendants next argue that the trial court committed manifest error by failing to allocate a sufficient degree of fault to the plaintiff. Louisiana Civil Code article 2828 provides, in pertinent part:
A. In any action for damages where a person suffers injury, death, or loss, the degree or percentage of fault of all persons causing or contributing to the injury, death, or loss shall be determined. ... If a person suffers injury, death, or loss as the result partly of his own negligence and partly as a result of the fault of another person or persons, the amount of damages recoverable shall be reduced in proportion to the degree or percentage of negligence attributable to the person suffering the injury, death, or loss.
In the instant case the trial court found Ms. Cline to be 15% at fault, attributable either to inattention or to her preexisting medical condition. Defendants argue that this assessment of fault is too low, considering that Ms. Cline admitted that, just prior to her fall, she was looking at the door of the service station rather than at the pavement.[4] According to the defendants, this inattention on the part of Ms. Cline merits an assessment of at least 75% comparative fault to her. Defendants assert that as an invitee, Ms. Cline assumed the ordinary and obvious risks involved in the use of a gas station and therefore had a duty to “walk with her eyes open, to observe the course which *268 [she was] pursuing, and to actually | ,?see and be guided by what [was] readily apparent.” See Meek v. Travelers Ins. Co., 188 So.2d 677 (La.App. 4th 1966), at 680 n. 3.
Regarding this issue, this Court has stated:
To be a defect, the imperfection must pose an unreasonable risk of injury to persons exercising ordinary care and prudence. A pedestrian has a duty to see that which should be seen and is bound to observe his course to see if his pathway is clear.
Williams v. Orleans Parish School Board, 541 So.2d 228, 230 (La.App. 4th Cir.1989) (Citations omitted). However, we have also held that “[a] pedestrian is not required to constantly observe the surface of the walk or to exercise the care that would be necessary in traversing a jungle.” Johnson v. New Orleans Dept. of Streets, 94-1542, p. 2 (La.App. 4 Cir. 2/23/95), 650 So.2d 1216, 1218 (quoting White v. City of Alexandria, 43 So.2d at 620).
In the instant ease, we cannot say that the percentage of fault the trial court attributed to Ms. Cline is unreasonable based on the record. An ordinary person exercising reasonable care does not walk with his or her head down constantly, but generally looks ahead. Ms. Cline testified that she was looking at the door she was heading toward, not at the ground. The plaintiff does not dispute the trial court’s finding that she was 15% at fault for failing to notice the uneven concrete slab. Under the circumstances, we conclude that there is a reasonable basis in the record for this assessment of fault, and that the trial court was not manifestly erroneous for failing to allocate a greater percentage of fault to the plaintiff.
III. Award of Future Medical Expenses
The defendants contend that the trial court committed manifest error by awarding an excessive amount of future medical expenses without sufficient [ 1sevidentiary support. The trial court found that Ms. Cline was entitled to $45,000.00 for future medical expenses. In its Reasons for Judgment, the court noted that the plaintiffs treating physician, Dr. Sulaiman, and the defendants’ medical expert, Dr. Applebaum, concluded that although the surgery performed on Ms. Cline had been successful in eliminating the possibility that a bone fragment could migrate and injure the spinal cord, the second goal of the surgery, which was to cause the fractured segments to fuse, had not been achieved. Both physicians also agreed that, although the lack of such fusion did not mandate future surgery for Ms. Cline, a second surgery would be one of her treatment options. Finally, Dr. Su-laiman testified that Ms. Cline would continue to have neck pain for the rest of her life, which would require periodic treatment including physical therapy, spinal injections, medication and possibly further surgery.
Defendants argue that, except for approximately $2600.00 to cover the remaining physical therapy treatments Dr. Sulai-man had prescribed at the time of trial, the plaintiff failed to introduce evidence to support her need for future medical expenses.
As this Court has repeatedly held, the proper standard to determine whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary. Moody v. Cummings, 2009-1233, p. 15 (La.App. 4 Cir. 4/14/10), 37 So.3d 1054, 1064 (citing Hoskin v. Plaquemines Parish *269 Government, 97-0061, p. 6 (La.App. 4 Cir. 12/1/97), 703 So.2d 207, 211). In Molony v. USAA Prop. & Cas. Co., 97-1836 (La.App. 4 Cir. 3/4/98), 708 So.2d 1220, this Court articulated that standard as follows:
114Future medicals need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred. Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to support the award must be contained in the record. If the fact finder can determine from past medical expenses or other evidence a minimal amount that reasonable minds could agree upon, then an award is proper.
Id., pp. 2-3, 708 So.2d at 1221-22 (citations omitted). Furthermore, in Dunomes v. Plaquemines Parish Government, 2009-0570 (La.App. 4 Cir. 10/21/09), 24 So.3d 242, we stated that “when the need for future medical care is established, but the cost is not, the factfinder may make a reasonable award.” Id., p. 3, 24 So.3d at 245 (quoting Lacy v. ABC Ins. Co., 97-1182, p. 13 (La.App. 4 Cir. 4/1/98), 712 So.2d 189, 196).
Applying this standard, we find the record demonstrates the existence of a reasonable factual basis for the trial court’s award of $45,000.00 in future medical expenses. The trial court heard Ms. Cline testify that she had constant neck pain. She also testified that her pain medication cost her approximately $42.00 per month. Dr. Sulaiman confirmed that Ms. Cline would probably have pain for the rest of her life and therefore would require further medical treatment including injections, pain medication, physical therapy and possibly surgery. This testimony by Dr. Sulaiman was uncontroverted. Indeed, Dr. Applebaum agreed that Ms. Cline may require surgery in the future. A reasonable inference from the medical testimony is that the conservative treatments Ms. Cline was receiving at the time of trial may well prove insufficient to address her symptoms in the future, at which point she could opt for surgery. Moreover, although the record does not contain the exact costs of future treatments, it does contain the current costs of Ms. Cline’s physical therapy sessions and medications, as well as the cost of her initial surgery. We do not find it unreasonable for the trial court to have used these amounts as | ^guidelines in determining that $45,000.00 was the appropriate award for future medical treatment. We find a reasonable factual basis in the record for that award.
IV. Award of General Damages
Defendants argue that the trial court’s award of $330,000.00 in general damages is excessive. As stated previously, general damage awards are inherently speculative; therefore, the trial court is afforded much discretion, and the appellate court may not disturb the trial court’s award unless an articulated analysis of the facts and circumstances of the case reveals an abuse of that discretion. Bouquet v. Wal-Mart Stores, Inc., supra, pp. 4-5 (La.4/4/08), 979 So.2d at 459.
In the instant case, the factual evidence does not indicate an abuse of discretion. Ms. Cline initially was transported by ambulance to the nearest hospital emergency room, where she received fourteen stitches in her head before being transferred to another hospital for surgery. Ms. Cline testified she was in severe pain from her broken neck, but was not allowed any pain medication for three days. She underwent neurosurgery which required the insertion of a permanent screw to stabilize her cervical fracture. Ms. Cline spent approximately about a week in the hospital, in- *270 eluding time in the intensive care unit. Upon her release, she was required to wear a cervical collar for about three months, could not drive for five months, and for one month required constant assistance from her daughter and her flaneé to perform normal daily activities such as showering, dressing and using the bathroom. Ms. Cline testified that she still experiences constant pain, which her doctor testified will probably be there for the rest of her life. Prior to the accident, Ms. Cline and her fiancé frequently enjoyed fishing, camping, boating, hiking, and dancing, none of which Ms. Cline has been able to do since the accident. Ms. Cline’s fiancé, Steve Mason, testified that this accident has “totally |1f,changed her life.” Ms. Cline can no longer drive long distances to visit relatives and friends as she did before the accident; she can drive only short distances because she has difficulty turning her neck. Ms. Cline’s daughter, Stacy Cash, testified that her mother, who was able to do her own housework, cooking, laundry, and yard work before the accident, now requires Stacy’s assistance to perform those tasks.
Considering these facts, we do not find that the trial court abused its discretion by awarding Ms. Cline $380,000.00 in general damages for pain, suffering, and loss of enjoyment of life. We therefore decline to disturb that award.
CONCLUSION
For the reasons stated, we affirm the judgment of the trial court.
AFFIRMED

. The answer filed by the original three defendants asserts that the Belle Chasse Shell is owned and operated by M & S Oil Services, LLC, and is located on property owned by Cheema Properties, LLC. The record reflects that Mohammad Cheema owns/ controls both *263 entities. Accordingly, on February 18, 2011 (one week prior to trial), upon the motion of the plaintiff, the trial court dismissed without prejudice the claims against defendant Mohammad Cheema only. The trial court's judgment was rendered against the remaining two defendants, which now appeal.

. See the discussion of La. R.S. 9:2800.6 A, infra.

. Moreover, these two cases each involved factual issues not present in the instant case, such as unclear photographic evidence (in Shipp) and whether there was proper lighting at the site of the plaintiff’s fall (in White).

. Defendants do not argue in their brief that Ms. Cline should have been assessed a greater degree of fault because of her preexisting medical condition that may have predisposed her to fall. The defendants were unsuccessful at trial in proving the affirmative defense that Ms. Cline’s fall was the result of her fainting rather than tripping on uneven concrete.
We note that, despite the trial court's indication to the contrary in its Reasons for Judgment, any weakened medical condition that might predispose a plaintiff to falling is not relevant to the determination of comparative fault pursuant to La. C.C. art. 2323. In Wheat v. State Farm Fire and Casualty Co., 583 So.2d 1 (La.App. 1st Cir.1991), the court explained: "Furthermore, within the meaning of LSA-C.C. art. 2323, a medical condition is neither contributory negligence nor fault which will reduce the award to the plaintiff. See Acosta v. Pendleton Memorial Methodist Hospital, 545 So.2d 1053 (La.App. 4th Cir.), writs denied, 551 So.2d 637 and 551 So.2d 638 (La.1989). The reason is that medical causation, such as the plaintiff’s predisposition to accident, does not qualify as conduct’ on the part of the plaintiff which can be considered under the principle of comparative causation.” Id. at p. 4.